ABRAHAM D. SALMON v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

1. A railroad company is bound to keep its track and contiguous land clear of materials likely to be ignited from sparks issuing from its locomotive, properly constructed and driven.
2. A person owning land contiguous to a railway, is not obliged to keep the leaves falling from his trees, from being carried by the wind to such railway ; nor to keep his lands clear of leaves and combustible matter; nor, on failure to perform such acts, does he become contributory to the production of a fire originating in the carelessness, on its own land, of the railroad company.

---

In case. On demurrer to declaration.

Argued at February Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE and KNAPP.

For the plaintiff, *H. C. Pitney.*

For the defendant, *Vanatta,* Attorney-General.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit originated in a fire occasioned by sparks from a locomotive of the defendant.

The fifth and sixth counts of the declaration, which has been skilfully drawn, omit, altogether, the usual allegation of negligence in the use of the locomotive of the defendant; and in lieu thereof, and for the purpose of showing an omission of duty on the part of the defendant, sets forth that the railroad track was suffered to be encumbered with combustible matter, and that the fire in question was caused by igneous cinders falling from the locomotive upon such matter, and being thence communicated to the woodland of the plaintiff. The duty of the defendant, in this respect, is stated in these words, viz.: "And thereupon it became the duty of the defendants, when said locomotive engines were being propelled along said railroad track, to preserve and keep the said strips of land in such a condition that fire should not be occasioned by reason of the hot ashes, burning coals, and other igneous matter falling and settling thereon from out of the said locomotive engines, and to take all necessary precautions to prevent any fire which might be occasioned on said strips from extending to and burning the said sprouts, wood, timber, and fences on the said last mentioned track of the said plaintiff." The neglect of this duty is the gravamen of these two counts; and for the purpose of testing their sufficiency, the defendant has put in a demurrer.

The question, therefore, on this issue is, whether a railroad company owes to the owner of the adjacent land the duty of keeping its track clear of matter liable to become ignited by fire from its locomotives—such engines being constructed in all respects, in a legal manner, and being handled with care and skill.

After a careful consideration of this subject, my opinion is, that the duty in question was incumbent on the defendant. Such duty appears to arise, by reasonable intendment, out of legislative grant to these corporations of the franchise to run their locomotives. In the absence of chartered rights, the use of such engines in the usual way, traversing whole districts, and throwing cinders and particles of fire on all sides, over the lands in the vicinity of the road, would be, upon the ordinary principles of the law, undeniable nuisances. But, in view of the necessities of our advanced civilization, the use of such instruments has been legalized. In the name of the public, the landed proprietor has been compelled to submit to annoyance, and to yield up a portion of his abstract rights to the convenience of the community. But such sacrifice, on the part of the land-owner, under the enlightened policy of this state, as well as under that of all other civilized countries, has been made as light as practicable. If the land of the citizen has been taken from him by compulsion, it has been paid for ; and where he has been subjected to other loss, he has received compensation. Nor is this all ; he has another guaranty against oppression, which is, that the privileges held by these companies, are all granted on the implied condition that they are to be so used as to occasion no unnecessary injury to the citizen. If it is legal to run their engines, such engines must be of the best construction ; and if they can scatter their cinders and sparks, it can be done only within the limit of a strict necessity. If, in these respects, such stringent obligations exist, why are these companies to be dispensed from all obligation, if their tracks are left in a dangerous condition with respect to fire ? They are bound to prevent, by the use of the most approved device, the escape of the fire from their engines ; what absolves them from all care as to such fire as soon as it has left such engines ? It is presumed that no one would claim immunity for one of these companies if it should place stacks of hay or straw in close vicinity to its track, and firing them, as it undoubtedly would, with its engine, should thus communicate the fire to the adja-

cent lands; and yet it is not easy to see the principle that would impose a responsibility in such case which would not do so for the omission to put its track in a safe condition. We are apt to forget, when we consider this subject, that the entire irresponsibility possessed by these companies for damage done by the fires which they occasion in the due exercise of their privileges, is derived exclusively from their charters; but bearing this fact in mind, it becomes much less difficult to assign the limit to such irresponsibility. Being simply clothed with the legal capacities of ordinary persons, if by the use of an engine on their own lands filled with combustible matter, they should fire such matter, and the flames should be carried on to the lands adjacent, there would be no question as to the responsibility for such an act; and the question, in such cases as the one now before us, therefore is, with respect to the extent of the immunity which has been given to these artificial persons. The inquiry, in fact, is simply as to the construction, in this particular, of the charter of the corporation. Did the legislature mean to exempt such corporations from all that liability to which, at the common law, they would have been subject, for firing their own land under the conditions already specified? I can see no reason to infer, either from the language of the charter of this company, nor from the business authorized, that such was the legislative intention. That a railroad company should be exonerated from liability for fire unavoidably caused by sparks from their engine, was reasonable enough; but that such exoneration should be given for fire originating from combustible matter unnecessarily being on their own land, would seem to be a superfluous concession. It should never be forgotten, that grants of this kind are to be construed strictly, and, as was intimated by Lord Langdale, (*Colman* v. *Eastern Counties R. C.*, 10 *Beav.* 1,) as it is the public interest to protect, as far as possible, the rights of every individual, such grants must always be carefully looked to, and must not be extended further than the legislature has provided, or than is properly required for the purposes which it has sanctioned. There

appears to be no reason whatever, why, to the evident detri-ment of the owners of lands along a railroad track, a privilege should be conferred on such company to run their locomotives, surrounded on their own premises by materials so combustible as to be in constant danger of being fired by such engines when running under ordinary conditions.

This precise question does not appear to have been very much considered by the courts. There are only two English cases which seem directly to touch the subject; the first being that of *Vaughan* v. *Taff Vale Railway Company*, 5 *Hurl. & Nor.* 679. In this case there were two counts in the declaration; the first count charging that the fire was communicated directly by sparks from the engine; the second count averred that the premises of the defendant were out of order, from having been left in a state liable to combustion, and that thereby the fire complained of had occurred. In the Exchequer Chamber, Chief Justice Cockburn, in the course of his remarks, says: " As regards the second count, if the facts alleged in that count had been established by the verdict of the jury, the defendants would have been liable." But the exigency did not require the point to be decided, so that all that can be claimed from this case is that it contains this weighty expression of opinion on the matter in question.

The other case, which is closely pertinent, is that of *Smith* v. *The London and South Western Railway Company*, reported in *Law Rep.*, 5 *Com. Pleas* 98. The circumstances were that the workmen of the company had left, for several weeks during the dry weather, the cuttings from the grass and hedges along the line of the road, which, taking fire from an engine properly constructed and driven, the sparks and flames were carried over intervening lands to the property of the plaintiff. It thus appears that the only negligence alleged was the omission to keep the track free from inflammable matter; and an examination of this report will show that neither the counsel of the railroad company nor the court suggested a doubt with respect to the legal duty of the com-

pany to see that its premises was in such a condition. The judgment in the case was in favor of the plaintiff.

A similar responsibility on the part of railroad companies has been enforced by the courts of some of the western states, as will appear from some of the decisions to be hereafter cited on the point next to be considered.

But there is another aspect to this case.

Besides the counts already considered there are four others, and these latter ones, unlike the former, contain an averment that the fire communicated to the premises of the defendant, and thence spreading to the land of the plaintiff, originated from the carelessness of the defendant in the use of its locomotives. To these counts there is a special plea, the object of which is to set up contributory negligence on the part of the plaintiff. The facts stated with this view are, that the lands of the plaintiff, adjoining the railroad, " were covered with living, growing trees, saplings, and bushes, &c., which annually produced and shed great quantities of leaves ;" that the plaintiff, " during all that time, took no care of or in regard to said leaves, and did nothing whatever to prevent them from blowing and drifting from the said lands of the said plaintiff to, over, and upon the said railroad track of the said defendant, but permitted them to be and remain where they fell, on his said tracts of land, to there become dry and inflammable, and then to be from thence, by the winds, from time to time, driven, carried, and thrown from the said lands of the said plaintiff to and upon the said lands and railroad track of the said defendant, and in such manner that said leaves formed a continuous line of dry, combustible matter, extending from the said lands and railroad track of the defendant to the said lands of the said plaintiff, and that said leaves, " while the said defendant was using its said railroad, and its locomotive engines thereon, in a lawful and careful manner, accidentally and unavoidably caught fire," and thence the injury complained of.

This plea, it is manifest, demands for its support the concession, that the law requires a man to alter the natural con-

ditions of his property, and to control, in some degree, the operation of the laws of nature with respect to such property, in favor of the owner of the adjacent lands. But this concession, I think, cannot be made. In the absence of special legislation, a man does not become a wrong doer by leaving his property in a state of nature. If water falls from the clouds upon its surface, the owner is not obliged to counteract the law of gravity in order to prevent such water from flowing on to the adjacent land ; or if the soil becomes disintegrated by the action of the heat, he is under no duty to prevent the dust thence arising from being carried through the air into the house of his neighbor. Such results are purely sequences of natural causes, and, like all other effects of the *vis major*, must be submitted to ; they cannot, in themselves, form any ground for a legal complaint. When this plea, therefore, attempts to fashion a wrong out of such matters, the very essence of legal liability, in this department of torts, is overlooked. Legal negligence does not consist simply of an omission to do that which would have prevented the infliction of damage on another, but, in addition to this, it involves a breach of duty. Mr. Wharton, in his complete and carefully considered definition of negligence, in its civil relations, says it " is such an inadvertent imperfection, by a responsible human agent, in the *discharge of a legal duty*, as immediately produces, in an ordinary and natural sequence, a damage to another." *Law of Neg.*, § 2. This plea charges that the plaintiff did not prevent the leaves falling from his trees, from being carried by the wind to the land of the defendant, but it altogether fails to show that he was under any legal obligation so to do. If the law annexed such a condition as that to the ownership of land, an action would lie for every leaf that should be blown by the wind from the trees upon such land to the neighboring property. But there is no such obligation known to the law. All land is subject to the servitude of receiving the leaves brought to it in the course of nature, and, as a compensation, can dispose of its own leaves in the same manner. The consequence is, there

was no negligence in the plaintiff's allowing the leaves in question to be carried to the roadway of the defendant, and that being so, it follows that, being on the land of the defendant rightfully, it became its duty to remove them when it desired to use fire on its land under dangerous conditions.

Under the force of the principles thus adopted, it becomes also manifest that the plaintiff is not chargeable with any legal neglect from leaving fallen leaves, the product of the trees, on his own land. It was his right to leave them there. A person is not called on to anticipate negligence on the part of another, and, by way of prevention, to make provision against its effects. The fire in question, upon the facts stated in these pleadings, was caused solely by the illegal act of the defendant, and there is no provision of law which required the plaintiff to foresee the doing of such an act, and to put his own land in a situation to withstand its effect. He owed no duty to the defendant in this respect, and, consequently, negligence, in the legal sense, cannot be imputed to him. It never would be thought that a person owning land in the vicinity of a canal was bound to raise embankments around such property, to guard against its overflow from water escaping by negligence from such artificial aqueduct, and yet the contention for the existence of such an obligation would be quite as tenable as is the claim that the present plaintiff was bound to put his property in a condition to withstand a fire proceeding from the heedlessness of the defendant. I am aware that it has been ruled in Illinois, that the owners of lands contiguous to railroads are as much bound to keep their lands free from dry grass and weeds as the railroad company is on its roadway, but I regard such cases as opposed to well settled legal principles. *Ohio and M. R. R. Co.* v. *Shanefelt*, 47 *Illinois* 497; *Illinois Central R. R. Co.* v. *Frazier, Ib.* 505; *Illinois Central R. R. Co.* v. *Nunn*, 51 *Illinois* 78. If this is the doctrine of the law, it is, I think, entirely manifest that the long line of decisions on the subject of the careless use of fire by a proprietor, on his own property, which we find in the books, have been rendered in utter disre-

gard to this important condition. The ruling of the courts has invariably been, that every proprietor is responsible for the ordinary and natural consequences of the careless use of fire on his own premises, and this without the least reference to the condition of the adjacent lands, to which the conflagration has spread. No support, in any of these authorities, can be found for the assumption, that if a land-owner places his stacks of grain or hay on the confines of his land, that thereby, in a legal point of view, he becomes a contributor to a fire occasioned by negligence on the land of his neighbor. By such an act, it is true, he takes the risk of the consequences of an accidental fire on the contiguous premises, but not of a neglect which he can be called upon neither to anticipate nor to guard against. In the leading case in Illinois it is assumed, that the same duty which will compel the railway company to clear its roadway of combustibles, imposes an equal obligation on the owner of the contiguous land, but the distinction between the cases is obvious: the company uses a dangerous agent, and must provide proper safeguards; the land-owner does nothing of the kind, and has a right to remain quiescent.

The plaintiff should have judgment.