NICOLA PIROZZI, PLAINTIFF-APPELLANT, v. ACME HOLD-
ING COMPANY OF PATERSON, A CORPORATION OF
THE STATE OF NEW JERSEY, AND PYRAMID PIECE
DYE WORKS, INC., A CORPORATION OF THE STATE
OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued June 12, 1950—Decided June 27, 1950.

*Mr. Hyman W. Rosenthal* and *Mr. Harry Chasin* argued the cause for the plaintiff-appellant; *Messrs. Marcus & Levy,* attorneys.

*Mr. George Winne* argued the cause for the defendants-respondents; *Messrs. Winne & Banta,* attorneys.

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of dismissal entered in the Bergen County Court, under *Rule* 3:41–2, on a motion at the close of the plaintiff-appellant's case.   The appeal is before this court on our own motion for certification.

The action was to recover for personal injuries sustained when the plaintiff tripped over a wood and metal cover which enclosed and covered a brick-lined pit housing a water meter on defendant's property and owned by the Passaic Valley Water Commission, which is not a party to the suit.   The complaint as amended consists of two counts; one based on negligence and the other based upon nuisance.   The defendants are the owner and landlord, Acme Holding Company, and a tenant, Pyramid Piece Dye Works, Inc., the employer of the plaintiff.

The defendant, Acme, in the interrogatories which were admitted in evidence, admitted it was the owner and landlord of the premises and that the meter pit and cover were on the property when the same was purchased by it.   The respondent, Pyramid, admitted it was a tenant in occupancy of the premises and further admitted Acme bought the property in June, 1941, that Pyramid moved to said premises November 21, 1941, and have occupied them since, under a lease, the said tenancy continuing to the present time by holdover tenancies. The lease in effect at the time of the accident commenced December 1, 1946.

There were two water meters for the premises; one of which was near Lewis Street on which the building faced, through which the water for the processing of materials was brought

into the building, and the other, the one in question, was located about 100 feet in from Lewis Street. This water meter was used in connection with the shop of the tenant Pyramid and with the boiler room of the landlord, Acme. The water bills for the water used at the premises were charged to the tenant, Pyramid, and water for fire purposes was charged to Acme, the owner and landlord. It was testified that the water for fire purposes was not water used for the sprinkler system but was the water supply to the boilers for steam purposes. The boilers were maintained and operated by four firemen employed by Acme, the landlord. No employees of Pyramid worked on the boilers. The steam from the boilers was used to heat the place and for the processing of the tenant's goods. There is testimony that these firemen employed by Acme went into the pit at times to turn the water on or off.

The Passaic Valley Water Commission installed this particular meter in 1922 in an open pit about 4 feet deep. It does not appear by whom or when the brick pit and cover were installed, but the proofs show that it was there when Acme took title and Pyramid went into possession in 1941. The plaintiff was injured as he walked in from Lewis Street to the employees entrance which was on the side of the main building facing on what appeared to be a street. There was some two inches of new snow on the ground over a base of earlier frozen snow which had packed down. The plaintiff testified he tripped over the wood and metal cover of the brick pit, his foot went under the cover and he fell across it sustaining the rather severe injuries for which he seeks recovery. This cover consisted of a metal top with a number of wooden cross-pieces attached underneath and which fit into the pit like a collar; the metal part was wider than the wooden part and overlapped and rested over the ledge or top of the brick walls of the pit. The metal top kept it from falling into the pit and the wooden part was supposed to keep the cover from sliding. But there is testimony in the case that it would move if it received a good kick or any force was applied to it. There is further testimony in the case that at times the brick ledge

was even with the dirt surrounding it but at other times it was not and that the plate had a slight curve in it so that at times one of its four corners would raise as much as an inch. This latter testimony relates to the day of the accident and to periods of time considerably previous thereto.

The complaint as originally drawn was on the theory that the defendants were under an obligation to maintain this water meter in a condition so that it was flush with the sidewalk and to inspect and keep the same in repair at all times. The theory of this complaint was nuisance. The amended complaint, which is not before us in the record, is conceded to contain two counts, one founded in nuisance and one on negligence.

The real dispute below was, as it is here, in regard to the nature of the *locus in quo*.

In the pre-trial order, which is not signed, it is stated:

"It is agreed that the area between the rear or side of the building located at 44 Lewis Street, Paterson, N. J., and the curb, is used by the public and by the employees of the Pyramid Piece Dye Works, Inc."

The main building as stated, faces on Lewis Street but on the side where this accident occurred there is a piece of land which all through the trial was referred to as Cedar Avenue, down which the employees walked to the side entrance and in which the two water meters, including the one in dispute, were located. There is testimony in this case that for a number of years the employees working in this building had walked down this way to the side entrance, that cars and trucks making deliveries came down here and up a driveway into the side entrance; that this way was kept clean of snow and attended to by employees of both the defendants. The testimony is that the meter in question was located down this so-called Cedar Street or way, 100 feet and that coming in from Lewis Street there is a cement sidewalk about 25 feet long, then for 75 feet there is only dirt and you come to the driveway made of cement and there is another spot of dirt just before the entrance.

Several witnesses in testifying as to the exact location of this meter testified it was four or five feet from the curbing. Another witness testified his car was parked on Lewis Street about one foot from the curb on Cedar Street. There is ample testimony of a public use of Cedar Street as a street, that various trucks came through there making deliveries not only to this property but to go to the garages on the other side of the street; that the city snow plows at all times had plowed the street and had plowed it at some time prior to this accident, that they did not push the snow over the curb, that the employees of the defendants shoveled the snow from the walks, or the way, and an officer of both Acme and Pyramid testified on direct examination that the property was bounded by Lewis, Cedar and Dover Streets.

These facts have been detailed at some length in order to demonstrate that the theory upon which the case was tried was one of both nuisance and negligence in erecting a nuisance within the public easement and the failure to properly maintain it.

At the time the motion was made to dismiss the Court on its own motion raised the question whether the street was a public street by dedication or prescription. Counsel in clear language indicated he could produce a witness, the tax assessor of the City of Paterson, who would testify that Cedar Street was a street by dedication or prescription. His application to re-open was not only denied but he was somewhat severely criticized by the Court. We are of the opinion that this was an abuse of judicial discretion. Certainly the whole purpose of pleadings and pre-trial orders is to prevent the parties from being surprised at the trial, yet here at the very last minute the Court itself raised a question that was implicit in this case from the moment the trial started and should have been effectively disposed of in a pre-trial order but was not. Counsel should have at least been given a reasonable opportunity to meet this question raised by the Court and which had been scrupulously avoided by the respondent during the trial. In fact the respondent seemed to proceed on the theory

that Cedar Street was a public street, that because of the fact a formal sidewalk of one type or other had not been laid the principles applicable in the latter situation would not apply to this case because the way or sidewalk was left in its natural state. Some of the cases we will advert to later on in this opinion were decided in a period when concrete and flagstone sidewalks were not a common thing. They still are not required today in many rural communities.

It is basic on a motion to dismiss at the close of plaintiff's case that the plaintiff is to have the benefit of all facts proven, together with all direct or indirect inferences which may be reasonably drawn from such facts. While the proofs here as to the public use of Cedar Street are not voluminous they are sufficient to raise a question of fact for the jury and to bring the case within the application of *Black v. Central Railroad Co.*, 85 *N. J. L.* 197 (*E. & A.* 1913); *Reaney v. Central Railroad Co.*, 89 *N. J. L.* 282 (*E. & A.* 1916).

In the *Black case* it was held that if the way in question presented the appearance of being a street and the defendant had participated in or acquiesced in such conditions then it was responsible for the consequences, one of which was that persons generally might use the way in the belief it was what it appeared to be. As to such users the liability of the defendant, arising out of the appearance so created by it, would be the same as if such street actually was what it appeared to be, under the rule that one who holds out a way as a public street is liable.

Such liability is based not upon the landowner's dedication of the street and its acceptance by the public, but upon the appearances he has created, so that the question for the jury is not whether such acts of the owner were proof of an intention to dedicate a public street, but whether they had created an appearance calculated to induce the public to use the way in the belief that it was what it appeared to be. The theory of this doctrine is one of implied invitation.

The distinction between this doctrine and dedication is both clear and fundamental, dedication being the permanent

devotion of private property to a use that concerns the public in its municipal character, whereas the doctrine of implied invitation is a rule of negligence applicable to the owner of the property only as long as he holds it out as intended for use by the public in their capacity as individuals. We are of the opinion that the evidence before the trial court presented a question for the jury under proper instructions and that it was error therefore to direct a judgment of dismissal. *Black v. Central Railroad Co., supra.*

██ It has been held that an owner may use the highway in front of his premises, including the sidewalk, when not restricted by positive enactment, for loading and unloading goods, for vaults and chutes, for awnings and shade trees, but only on condition that he does not unreasonably interfere with the safety of the highway for public travel. Any such interference, arising from a want of due care on his part, is unreasonable, and therefore to occasion such interference, by negligence in the exercise of his subordinate private rights, is a breach of public duty. This public duty to exercise reasonable care, imposed on every person using the highway for such private ends as will endanger the use of the highway if negligence takes place, exists for the benefit of individual travelers, and hence, when an individual sustains peculiar personal injury as the result of such negligence, a private action accrues to him against the person in default. For it is a general principle, that where there rests upon any person a public duty, either arising at common law or created by statute, and that duty is due to the public, considered as composed of individuals, and for their protection, each person specially injured by a breach of the obligation is entitled to a private action to recover compensation for his damage. *Weller v. McCormick*, 52 *N. J. L.* 470 (*Sup. Ct.* 1890).

█ It has been further held that the owner in making such use of the way is required to do so by such a method of construction as not to create a nuisance but having done this is under the further legal duty to exercise reasonable care to keep the structure safe for the use of the public. *Young v.*

*National Bank of New Jersey,* 118 *N. J. L.* 171 (*E. & A.* 1937). The doctrine of the *Young case* was applied in a case involving a water meter installed in a sidewalk, *Fay v. Trenton,* 126 *N. J. L.* 52 (*E. & A.* 1941), and the doctrine was enlarged and fully explained in *Saco v. Hall,* 1 *N. J.* 377 (1949).

If on the new trial of this issue proof is adduced that Cedar Street was in fact a public street then these latter cases will be controlling and the plaintiff will not have to rely on the doctrine of implied invitation enunciated in the *Black* and *Reaney cases.*

We are not to be understood to imply that where the obstruction, instrumentality, device, vault, pole, etc., is installed in the public way by either the municipality or a public utility pursuant to statute, ordinance or other legal authorization that any liability will arise on the theory of negligence against the owner or tenant of the premises for failure to maintain or keep in repair any pole, water meter, cable or other such installation. It has been so held in *Ford v. Jersey Central Power, &c., Co.,* 111 *N. J. L.* 112 (*E. & A.* 1933); *Garvey v. Public Service, &c., Transport,* 115 *N. J. L.* 280 (*E. & A.* 1935); *Starr v. Adelphia Holding Corp.,* 124 *N. J. L.* 521 (*E. & A.* 1940); *Fay v. Trenton, supra; Newman v. Ocean Township,* 127 *N. J. L.* 287 (*E. & A.* 1941).

A question arose below as to the respective liability of the landlord Acme, and the tenant, Pyramid. At the pre-trial conference it was indicated that the suit would be discontinued as to the tenant Pyramid, on the ground that the appellant's remedy, if any, was under the Compensation Act. Subsequently the Court was advised that the tenant, Pyramid, denied liability for workmen's compensation on the ground that the accident did not occur during the course of the employment and the suit was then continued against Pyramid. The position thus taken by Pyramid indicated that it considered the way or sidewalk on Cedar Street to be part of the public street rather than part of their premises, for they apparently relied on the case of *Gullo v. American Lead Pencil Co.,*

119 *N. J. L.* 484 (*E. & A.* 1938), where the employee slipped on the sidewalk in front of the premises outside the entrance gate of the plant. *Cf. Grady v. Nevins Church Press Co.,* 120 *N. J. L.* 351 (*E. & A.* 1938).

The general rule as to responsibility for a nuisance erected or maintained in a public way is that the landlord's liability to strangers and to those who occupy the relation of members of the general public, is confined to the injurious consequences of that which in its very essence and nature is a nuisance at the time of the letting and does not extend to that which is merely capable of being, thereafter, rendered a nuisance by the tenant. The basic ground of liability is that the landlord, in such cases, is the author of the mischief. *Wasilewski v. McGuire Art Shop,* 117 *N. J. L.* 264 (*Sup. Ct.* 1936). The material fact to be determined in all such cases is whether the landlord has retained any measure of control. If so he will be deemed to have at least participated in the wrong. Where, however, an owner demises land with a nuisance on it created by him or by his predecessor in title, he remains liable. It is no defense to such claim that by demising the land he has lost power to abate the nuisance; he should have so abated it before parting with control. *Meyer v. Harris,* 61 *N. J. L.* 83 (*Sup. Ct.* 1897).

There is proof in this case that this meter pit and top were in the same condition on the day of the accident as they were at the time Acme took title and Pyramid went into possession. Under the proof it would seem that exclusive control of the demised premises did not pass to the tenant, Pyramid. Acme was in control of the operation of the boiler shop, the supply of heat and steam for the processing of goods, the firemen maintained in the boiler shop were its employees and the water bill for the boiler operations were paid by it, and its men had access to the meter for the purpose of turning the water on and off, together with the employees of Pyramid. There are conflicting proofs and inferences which may be drawn therefrom on the question of the control of the water

meter and pit by either the tenant or owner and landlord individually or a joint control by both which presents a jury question.

On the question of control evidence of repairs and alterations made after the accident are evidential, not for the purpose of establishing lack of due care but proving control as of the time of the accident. *Perry v. Levy,* 87 *N. J. L.* 670 (*E. & A.* 1915); *Trondle v. Ward,* 129 *N. J. L.* 179 (*E. & A.* 1942). There was sufficient proof in this case for it to go to the jury on the question of nuisance and on .the question of negligence in failing to keep the cover of the water meter in repair and so maintain it that it would not be a danger to persons rightfully using the way or street. There was also ample proof to raise a jury question that the condition existed for a sufficient period of time to constitute notice to both the landlord and the tenant of its existence.

Since the case must be re-tried we deem it necessary that a new pre-trial conference be had whereat all facts which can be admitted by the parties should be set forth and settled, particularly the formal proof on the question of the dedication of the street by ordinance or otherwise, if such there be. Likewise it should be definitely established if the street was formally dedicated, that Cedar Street lies within the boundaries set forth in the two ordinances of the City of Paterson regulating sidewalks and the erection of vaults, grates, etc., within the limits of the public easement. If Cedar Street lies within these limits then these ordinances are admissible in evidence. It should be determined at the pre-trial whether the case is to proceed on one of the following theories: (1) that Cedar Street is a dedicated street; or (2) whether the street has been dedicated by prescription by public user for the required period of years; or (3) whether the case will be tried on the theory of the *Black* and *Reaney* cases.

It was the failure to properly pre-try this case that in large measure led to the difficulties of the trial and on this appeal where we have been confronted with a rather unsatisfactory record which does not even set forth the amended complaint.

The judgment of dismissal is reversed, but without costs, to the end that a *venire de novo* shall issue.

*For reversal*—Justices CASE, HEHER, OLIPHANT, WACHEN-FELD, BURLING and ACKERSON—6.

*For affirmance*—None.