55 N.J. Super. 475 (1959)
151 A.2d 48
SAVERIA SARNICANDRO AND DOMINICK SARNICANDRO, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
LAKE DEVELOPERS, INC., A CORPORATION, ETC., DEFENDANT-RESPONDENT, AND PATRICK FERRANTE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1959.
Decided May 11, 1959.
*477 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Bertram J. Latzer argued the cause for appellants.
Mr. Nicholas Scalera argued the cause for respondent Lake Developers, Inc. (Mr. George D. McLaughlin, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Saveria Sarnicandro sued for injuries suffered when she fell on the outside steps leading to the basement of the Ferrante house. She named as defendants the builder, Lake Developers, Inc. (Lake), and the owners and occupants, the Ferrantes. Her husband sued per quod. The action was grounded in negligence; the complaint charges Lake with improper construction of the *478 steps and the Ferrantes with negligent maintenance of the premises. The County Court granted summary judgment dismissing the complaint against Lake, and plaintiffs appeal.
Sometime prior to November 1955 the Ferrantes contracted with Lake to purchase the house in question. Lake completed construction late in 1955. The Ferrantes moved into their new home November 13, 1955, and thereafter took title from Lake on March 27, 1956. Plaintiffs are Mrs. Ferrante's parents. On May 3, 1957 the Ferrantes leased a portion of the premises to them, including the use of the bathroom, kitchen, living room, basement, and the outside concrete stairs leading to the basement.
A week or two after moving into the house the Ferrantes discovered that "there were some slight differences in the measurements of the treads and risers" of the outside cellar stairs  specifically, the fourth and fifth steps were narrower than the others. They claim they spoke to the builder about it and Lake promised to remedy the condition. It did not do so. On March 1, 1958, more than two years later, Mrs. Sarnicandro fell while going down the cellar steps.
In entering summary judgment in Lake's favor the trial judge expressly determined that "there being no just reason for delay, the within order is final." The parties have obviously considered this provision as sufficient to make the appeal non-interlocutory under R.R. 4:55-2. We will not consider whether the order was, actually, interlocutory and therefore required leave to appeal pursuant to R.R. 2:2-3(a). The question, were we to discuss it, would involve distinguishing between cases of multiple claims and those involving multiple parties. See the discussion of Federal Rules of Civil Procedure, rule 54(b), 28 U.S.C.A., of which R.R. 4:55-2 is the counterpart, in 6 Moore, Federal Practice (2d ed. 1948), § 54.34, pp. 240 et seq.; cf. West Side Trust Co. v. Gascoigne, 39 N.J. Super. 467, 469-470 (App. Div. 1956), and cases there cited. The trial judge having certified the summary judgment as final, the parties not having argued or considered the possibility *479 of a procedural bar to the taking of the appeal, and the interest of Lake being in fact quite distinct from that of the Ferrantes, we proceed directly to the merits.
For the purposes of this appeal (as was the case when Lake moved for summary judgment) we have this factual picture: Lake built the house in 1955; the cellar steps were improperly constructed; the Ferrantes took possession in late 1955, and discovered the faulty construction two weeks later; they requested Lake to correct the condition, and it failed to do so; the Ferrantes took title early in 1956; at first they occupied the entire house, but later rented part of it to plaintiffs; the steps at the time of the accident two years later were under the control and in the possession of the Ferrantes.
The general rule is that, once the vendee has taken possession, the vendor of real estate is not subject to liability for bodily harm caused to the vendee or others while upon the premises by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. 2 Restatement, Torts, § 352, p. 961 (1934); 2 Harper and James, Law of Torts, § 27.18, p. 1518 (1956); Prosser, Torts (2d ed. 1955), § 79, p. 462; Annotation, 8 A.L.R.2d 218, 220 (1949); 65 C.J.S., Negligence, § 93, p. 607 (1950). None of these authorities appears to find different legal consequences following upon whether the vendor himself created the dangerous condition or, as in the case of failure to repair, merely suffered it to exist. However, Harper and James criticize the rule in its application to third persons who enter on the land after title and possession have passed to the vendee, in a case where the vendor negligently created the dangerous situation and then transferred the property in that condition. They find it difficult to see "why on principle the vendor's liability to third persons should not depend on the likelihood of harm to them," although they admit that this would turn, at least in part, on the likelihood that the vendee would in fact admit such third persons onto the property without *480 discovering the danger and remedying it, or warning of its existence. Criticisms like that just mentioned are based mainly on the contention that there is no logical distinction between the position of a vendor of real property and that of a manufacturer and seller of goods. The argument proceeds that since a manufacturer is liable to a third person for injuries he reasonably could have foreseen would result from his negligence, O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 (1953), one who creates a dangerous condition on real property and then sells the premises should be liable to the same extent.
Whatever measure of logic there may be in support of the argument so made, the cases have consistently refused to hold a vendor of real estate liable to a third party for injuries suffered by reason of a dangerous condition of the premises created while the vendor still owned and was in possession of it. Attempts to establish such a liability by analogy to landlord and tenant cases have uniformly been rejected. The relations of vendor-vendee and landlord-tenant arise out of totally different types of transactions and contemplate entirely different types of possession. In an absolute sale, the vendor divests himself of title and all right of possession or of reentry for repairs or for any other purpose. The landlord retains his reversionary interest in the premises, and is a present owner with a right to enter upon his property for the making of repairs. See McQuillan v. Clark Thread Co., 12 N.J. Misc. 409, 410 (Sup. Ct. 1934); Annotation, 8 A.L.R.2d, above, at page 220; Combow v. Kansas City Ground Investment Co., 358 Mo. 934, 218 S.W.2d 539, 8 A.L.R.2d 213 (Sup. Ct. 1949); Smith v. Tucker, 151 Tenn. 347, 270 S.W. 66, 41 A.L.R. 830 (Sup. Ct. 1925). The courts have also refused to hold a vendor liable on the theory that he impliedly warranted the premises to be in a safe condition, because there are no implied warranties of safety in sales of real estate, even though the vendor be the builder of the house where the defective condition exists. Otto v. Bolton & Norris, [1936] *481 2 K.B. 46, 1 All Eng. 960; Kilmer v. White, 254 N.Y. 64, 171 N.E. 908 (Ct. App. 1930); Combow v. Kansas City Ground Investment Co., above; Allen v. Reichert, 73 Ariz. 91, 237 P.2d 818 (Sup. Ct. 1951); Berger v. Burkoff, 200 Md. 561, 92 A.2d 376 (Ct. App. 1952); see 2 Harper and James, above, at pages 1518 and 1520; Levy v. C. Young Construction Co., Inc., 46 N.J. Super. 293, 296-297 (App. Div. 1957), and authorities cited, affirmed 26 N.J. 330 (1958).
There are some exceptions to the general rule just discussed. One is where the vendor creates a situation which interferes with the rights of the public or with the use or enjoyment of adjoining lands. In cases where the land is transferred in such a condition that it involves an unreasonable risk of harm to those outside the premises, the vendor has been held liable on the theory of a public or a private nuisance, at least for a reasonable length of time after he has parted with possession. Prosser, Torts, above, § 79, p. 463; 2 Harper and James, above, § 27.19, p. 1521; 2 Restatement, Torts, § 373, p. 1005. Although plaintiffs at the argument on the motion for summary judgment sought to predicate liability on the theory of nuisance (the issue was not raised in either the pleadings or pretrial order), that theory cannot avail them. The vendor created no danger to the public and did not interfere with adjoining land.
Another exception which has led to holding a vendor liable is his failure to disclose a dangerous condition known to him, where he should have realized that the vendee did not know and probably would not discover the condition or its potentiality for harm. See 2 Harper and James, above, § 27.18, p. 1520. The Restatement, Torts, puts the rule in this fashion:
"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the *482 consent of the vendee or his subvendee, after the vendee has taken possession, if
(a) the vendee does not know of the condition or the risk involved therein, and
(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk." (§ 353, pp. 961-962)
The basis for liability in such a case is "something like fraud" in permitting the vendee and those whom he allows on the premises to enter in the face of a concealed and undisclosed hazard and, as Prosser puts it (§ 79, p. 463), because the risk to the latter is clearly great in proportion to the relatively slight burden of disclosure cast upon the vendor. Cf. McCabe v. Cohen, 294 N.Y. 522, 63 N.E.2d 88 (Ct. App. 1945); Annotation, 8 A.L.R.2d, above, at page 227; and see Palmore v. Morris, Tasker & Co., 182 Pa. 82, 90, 37 A. 995 (Sup. Ct. 1897). Contra, Riley v. White, 231 S.W.2d 291 (Mo. App. 1950); Swinton v. Whitinsville Savings Bank, 311 Mass. 677, 42 N.E.2d 808, 141 A.L.R. 965 (Sup. Jud. Ct. 1942); Smith v. Tucker, above, 151 Tenn. 347, 270 S.W. 66, 41 A.L.R. 830 (Sup. Ct. 1925); Day v. Frederickson, 153 Minn. 380, 190 N.W. 788 (Sup. Ct. 1922); Bottomley v. Bannister, [1932] 1 K.B. 458.
We need not concern ourselves here with what some authorities term a legal dilemma which arises under the general rule, stated above, relieving a vendor of liability as soon as title passes. Thus, 2 Harper and James, § 27.18, p. 1519, states that the law must either relieve the vendor before fixing liability on the vendee, see Kilmer v. White, above, 254 N.Y. 64, 171 N.E. 908 (Ct. App. 1930), or hold the vendee before he has had a chance to inspect and repair the premises. The Restatement, above, § 352, p. 961, adopts the latter solution. Relieving the vendor of liability as of the moment that possession and title pass has, as even Harper and James admit, the "practical advantages of administrative simplicity and a correspondence with the practice of owners to insure against liability only for *483 the periods when they have possession." (at page 1520) The cases collected in the A.L.R. annotation, above, almost unanimously follow the Restatement rule, as does the McQuillan case, above, 12 N.J. Misc. 409, 411.
Here the vendee, the Ferrantes, knew about the allegedly defective steps within two weeks of taking possession. Although they asked Lake to correct the condition, they proceeded to take title without its doing so, and continued in ownership and possession without further protest for some two years before the accident happened. This was no hidden defect, or a case where the vendor knew of the condition and the risk involved and had reason to believe that the vendee would not discover the condition or realize the risk. The vendee had knowledge, practically instanter after moving into the house.
East Jersey Water Co. v. Bigelow, 60 N.J.L. 201 (E. & A. 1897), upon which plaintiffs heavily rely, is not in point. There the vendor water company expressly reserved the right to maintain and control the dam which was diverting water from the Bigelow property. It had created a nuisance and was continuing to operate it, to the injury of another outside the land.
We have been referred to only one New Jersey case which discusses the vendor's liability for unsafe premises, McQuillan v. Clark Thread Co., cited above. In that case plaintiff had fallen on a sidewalk alleged to be in a defective and dangerous condition, and sued the company which had sold the property only five days before, possession being delivered the same day. The company had conveyed the property by warranty deed without reservations. That case differs from the one before us because the company there had not created the dangerous condition but had merely allowed the sidewalk to fall into disrepair. The court struck the complaint, holding the vendor not liable either on the theory of negligence or the maintenance of a nuisance. (Plaintiff had sought to add the latter ground by way of amendment.) The court declared that the vendor's liability *484 ceased as of the time the vendee took title and possession, and expressed concern about extending a vendor's liability for an unforeseeable period beyond that time. The same concern was expressed by the trial judge in this case. Admittedly, the McQuillan case differs from ours, not only because the vendor did not create the dangerous condition, but because involved there was an unreasonable risk of harm to those outside the premises.
We conclude that the trial court was correct in granting Lake summary judgment. Although the boundaries of tort liability for dangerous conditions on land have gradually been extended by our courts in recent years, the authorities and practical considerations give no support to our doing so in the present circumstances. Insurance has been an important factor in many of the cases involving extension of tort liability. It is extremely unlikely, however, that after selling the property a vendor would continue insurance coverage against liability such as plaintiffs seek to visit upon Lake in this case. (It is to be remembered that Lake sold the house some two years before the accident.) On the other hand, the person who does own the property can conveniently insure himself against liability to third persons. The vendee here, the Ferrantes, would of course be liable to their tenant for failure to use reasonable care in keeping the premises in a safe condition since, by hypothesis, the danger was discoverable and, in fact, discovered.
Affirmed.