111 N.J. Super. 203 (1970)
268 A.2d 46
FRANCES E. NARSH, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JAMES H. NARSH, DECEASED, PLAINTIFF-CROSS APPELLANT,
v.
ZIRBSER BROTHERS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT - APPELLANT, ZIRBSER - GREENBRIAR, INC., A CORPORATION OF NEW JERSEY; ST. STEPHEN'S LUTHERAN CHURCH OF WOODBURY, NEW JERSEY, A CORPORATION OF NEW JERSEY; AND GEORGE G. GREEN, JR. AND CAMDEN TRUST COMPANY, A CORPORATION OF NEW JERSEY, EXECUTORS AND TRUSTEES OF THE ESTATE OF GEORGE G. GREEN, DECEASED, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1970.
Decided July 30, 1970.
*205 Before Judges KILKENNY, LABRECQUE and LEONARD.
*206 Mr. Neil F. Deighan, Jr. argued the cause for defendant-appellant Zirbser Brothers, Inc. (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. Edgar E. Moss, II argued the cause for defendant-respondent St. Stephen's Lutheran Church of Woodbury (Messrs. Moss & Powell, attorneys).
Mr. Martin F. Caulfield argued the cause for plaintiff-cross appellant Narsh (Messrs. Ware, Caulfield, Zamal & Cunard, attorneys).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff Frances E. Narsh, as administratrix ad prosequendum of the estate of her deceased husband, obtained a judgment for $85,000 against defendants Zirbser Brothers, Inc. (Zirbser) and Zirbser-Greenbriar, Inc. (Greenbriar), following a jury trial. Zirbser appeals from denial of its motion for a new trial. Plaintiff cross-appeals from that portion of the verdict exonerating defendant St. Stephen's Lutheran Church of Woodbury (the church) from liability, and from the refusal of the trial judge to grant a new trial by reason of the inadequacy of the verdict.
On April 28, 1967 plaintiff's decedent, James H. Narsh, met his death when a large tree fell upon him as he was driving his car on North Evergreen Avenue, Woodbury, New Jersey. The plot on which the tree had been standing was heavily wooded with old trees, a number of them being close to the North Evergreen Avenue sidewalk. School children used the sidewalk going to and from a nearby school. A witness who resided in an apartment across the street heard a cracking noise and saw the tree fall onto decedent's car. He had previously noticed that the tree, which was very close to the road, was "sort of rotten and there was no life to it at all." When it fell it broke into "a lot of pieces." Many of its branches had come off and there had been no *207 leaves on the tree since he moved there about two years before. Asked to describe the trees in the general area he said, "There was a lot of them living and a lot of them wasn't." A number of trees in the grove were cut down after the accident.
A police officer who investigated the accident testified that when he arrived he found the tree to be all rotted and disintegrated. There were a dozen or more stumps of trees in the vicinity and he observed a trailer on the rear of the property, as well as brush which had been piled up there. Additional portions of the testimony will be referred to infra in connection with the points to which they have relevance.
The plot on which the tree had been located had been conveyed in March 1964 from the estate of George G. Green, deceased, to defendant Zirbser Brothers, Inc., a closed family corporation. Zirbser Brothers, Inc. retained title until May 5, 1966 when it conveyed to Zirbser-Greenbriar, Inc., a closed corporation formed by the Zirbser brothers, having the same stockholders, directors and officers as Zirbser Brothers, Inc. The latter retained a portion of the tract for a convalescent and nursing home, and, on April 20, 1967, sold the remainder, on which the offending tree was located, to the church. The accident occurred eight days later. All four mentioned parties were made defendants in the action for decedent's wrongful death.
There was a severance and the case was first heard on the issue of liability. The jury was required to pass upon the liability of each of the defendants. It unanimously exonerated the Green estate and the church, and, by a 10 to 2 vote, found both Zirbser Brothers, Inc. and Zirbser-Greenbriar, Inc. "guilty of negligence which was a proximate cause of the accident." The case was then tried as to damages, the same jury returning a verdict for $85,000. Following the entry of a concomitant judgment, a motion by Zirbser Brothers, Inc. for judgment n.o.v. or a new trial as to liability was denied, as were motions by plaintiff for a new trial *208 as to liability as against the church and a new trial as to damages as to all. Greenbriar does not challenge the judgment against it.
On the issue of liability, the substance of the argument of Zirbser is that (1) it owed no duty to decedent since it was not in possession or control of the premises at the time of the accident, and (2) as a vendor and former owner of the land it was not responsible for injury or death sustained, after it had conveyed the land, by a person outside the land caused by a natural condition existing thereon at the time it conveyed title and (3) the verdict was contrary to the weight of the evidence. Plaintiff urges that the verdict of no liability on the part of the church was so contrary to the weight of the evidence as to amount to a manifest denial of justice.
The rule is well settled in this State that one who places or maintains in or near a highway anything which, if neglected, will render the way unsafe for travel, is bound to exercise due care to prevent it from becoming dangerous. In Weller v. McCormick, 47 N.J.L. 397 (Sup. Ct. 1885) and Weller v. McCormick, 52 N.J.L. 470 (Sup. Ct. 1890) that doctrine was applied in the case of a pedestrian who was injured by the fall of a dead limb from a tree which had been planted in a sidewark area by a prior owner of the property. In upholding a finding of liability on the part of the owner the court held:
From the ownership and unlimited right of control thus possessed by the defendant, it must be concluded that he maintained the tree in the street, for his private purposes; and hence, as stated in our former opinion in this case (18 Vroom 397, 47 N.J.L. 397) he was bound to exercise due care to prevent its becoming dangerous. This obligation is plainly deducible from the relative rights of the public and the abutting owner in the highway. The public right is paramount, and includes the right to have the street safe for travel. That of the abutting owner is subordinate to this public right. 52 N.J.L., at 472.
In 2 Restatement, Torts 2d § 363(2), at 258 the rule is set forth as follows: "(2) a possessor of land in an urban area *209 is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." 39 Am. Jur.2d, Highways, Streets and Bridges, § 542, at 949-50 (1968) sets forth the rule as follows:
An abutting landowner, in the absence of municipal or statutory regulations placing the control of trees in or along the highway in the public authorities, is required to use due care to prevent harm from falling trees to persons lawfully using the highway, and may be held liable for injuries sustained by travelers as a result of the fall of a tree through the active intervention of the abutting owner, or because of natural decay. The view has been taken that it is the duty of the landowner to exercise reasonable care to prevent the fall of a tree into the highway even though this may entail constant and periodic inspection of the tree to determine its safe condition, but this rule has been held not to apply to owners of premises abutting rural highways.
See also Turner v. Ridley, 144 A.2d 269 (D.C. Mun. Ct. of App. 1958); Brandywine Hundred Realty Co. v. Cotillo, 55 F. 2d 231 (3 Cir.1931), cert. den. 285 U.S. 555, 52 S.Ct. 411, 76 L.Ed. 944 (1932); Lamarche v. Les Reverends Peres Oblats, 29 Que. C.S. 138 (1905); Medeiros v. Honomu Sugar Co., 21 Hawaii 155 (1912); Plesko v. Allied Inv. Co., 12 Wis.2d 168, 107 N.W.2d 201 (Sup. Ct. 1961).

I
Plaintiff challenges the jury's exoneration of the church on the ground that as the actual owner of the premises it was primarily, or, at least, equally responsible for the effects of the fall of the tree which was then growing on its property. It argues that the jury's verdict was so contrary to the weight of the evidence as to amount to a manifest denial of justice. R. 2:10-1. As noted, the trial judge declined to disturb the verdict.
The church was not a guarantor of the safety of those using the highway. Its obligation was to exercise *210 reasonable care to prevent the tree from falling and endangering the public. We are satisfied that its asserted liability involved an issue of fact which was properly submitted to the jury, and that the resultant verdict did not amount to a manifest denial of justice. We concur with plaintiff's contention that the church could have been held liable even though it had not taken physical possession of the tract. The court so charged, stating that there was no special formula or procedure for possessing vacant land, that the owner thereof was deemed in law to be the possessor, and it was not necessary for him to physically enter upon the land after acquiring title in order to possess it. It further charged that possession meant the unqualified right to enter upon the land and perform any action upon it consistent with ownership. It left it to the jury to determine whether, under the circumstances, the church had exercised reasonable care during the period of its ownership. See Turner v. Ridley, supra. It was specifically directed to return an answer to the question, "Was St. Stephen's Lutheran Church of Woodbury guilty of negligence which was a proximate cause of the accident?" Its answer was "No."
We are satisfied that denial of the motion for a new trial did not amount to a mistaken exercise of the trial judge's discretion. Having due regard to the factor of credibility present in the case, it does not clearly appear that the jury's verdict amounted to a miscarriage of justice. R. 4:49-1 (a) (formerly R.R. 4:61-1(a)); Dolson v. Anastasia, 55 N.J. 1, 7 (1969); Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962). Here the credibility of the pastor of the church was a vital factor in resolving the issue of its asserted negligence, and the judge, who had the feel of the case, was in a better position than are we to determine whether the evidence was adequate to support the verdict. Hartpence v. Grouleff, 15 N.J. 545, 549 (1954). The church had acquired title to the vacant lot only eight days before the accident. The jury could have concluded that due to the limited time available and the difficulty in determining the condition of *211 the trees upon a cursory examination, the failure of the church to detect the condition of the tree in question did not amount to a negligent omission on its part. See Simmel v. N.J. Coop Co., 28 N.J. 1 (1958). Had its admittedly rotten condition been more easy to detect, or had there been more time to do so, the jury might well have reached a different conclusion.

II
In passing upon Zirbser's motion to dismiss and for judgment in its favor the court was required to consider the proofs in the light most favorable to plaintiff, and to accord her the benefit of the most favorable inferences reasonably to be drawn from them. Pirozzi v. Acme Holding Company of Paterson, 5 N.J. 178, 185 (1950). Here the testimony would have supported the conclusion that the grove of trees was from 40 to 50 years old, that the tree here involved had been dead or dying for a period of between one and two years and that it was located close to the sidewalk where, if it fell, it posed a danger to pedestrians and motorists. It could also have found that it was reasonably foreseeable, from the conditions which existed in the grove, that injury might result. There was proof that one of the Zirbser brothers had had his attention called to dead limbs falling from trees in the area, with the idea that they "do something." As to the subject tree, there was visual proof that its entire top was dead and rotted out; it had had no leaves on it the year before; and it had only one green branch, two to three inches thick and about 20 feet up, at the time it fell.
That the condition of the offending tree could not have differed substantially from that of other trees in the grove, is confirmed by the testimony of Howard B. Ballinger, the Building Inspector and a member of the Municipal Shade Tree Commission. He testified, when called by Zirbser, that 24 of the 25 trees, cut down on orders of the church after the accident, were found to be rotten and decayed inside. Brady, a tree surgeon, also called by Zirbser, testified that *212 the tree in question had smashed "into a million pieces," and that after the accident he removed about 50 trees and found all the large ones to be "in a terrible shape" because "the inside was all deteriorated." Thus, had Zirbser been the owner at the time of the accident, a judgment against it would have been fully supportable by the proofs. Weller v. McCormick, supra; Sarnicandro v. Lake Developers, Inc., 55 N.J. Super. 475 (App. Div. 1959).
However, it is clear that Zirbser neither owned nor was in possession of the lot in question at the time of the accident. Its conveyance to Greenbriar had taken place almost a year before. From the testimony of Edward J. Zirbser it would appear that Zirbser was constructing the convalescent home at the time of the conveyance of Greenbriar in May 1966, and construction continued thereafter until the project was completed. During the course of construction Zirbser had on the premises a construction trailer, a trailer for the storage of materials, and other materials and supplies. On April 20, 1967, when Greenbriar's conveyance to the church took place, Zirbser's construction trailer, as well as some other material and supplies owned by it, remained on the portion of the premises conveyed to the church. At the time of closing Zirbser agreed to remove them and other debris left on the lot. No time limit was fixed but they were to be removed before the formal dedication of the property.
So far as appears here, Zirbser's right to have its equipment and supplies remain on the lot did not have associated with it the right to control which was essential to its liability as a possessor of the property. Cf. Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 70-71 (App. Div. 1961); 2 Restatement, Torts 2d, § 328(e), at 170, § 363, at 258 (1965). From the time of the sale to the church, Zirbser was without right to cut down trees or otherwise police the part of the property where the subject tree was located. As of the time of the accident, Zirbser's presence on the property purchased by the church, standing alone, would not afford an *213 adequate basis for a present duty on its part to guard against the falling of the tree. It remains to be determined whether, as a prior owner or possessor, it continued liable for the effect of the dangerous condition which it had allegedly maintained and failed to correct or guard against during its ownership.
In Sarnicandro v. Lake Developers, Inc., supra, 55 N.J. Super. at 479, it was noted that, in general, once the vendee has taken possession, the vendor of real estate is not subject to liability for bodily harm caused to the vendee or others while upon the premises by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. It was pointed out, however, that those cases in which the land is transferred in such a condition as to involve an unreasonable risk of harm to those outside the premises are an exception to the general rule. In such cases, the vendor remains liable on the theory of a public or private nuisance, at least for a reasonable time after he has parted with possession. Sarnicandro, supra, 55 N.J. Super. at 481; see also Cavanaugh v. Pappas, 91 N.J. Super. 597 (Cty. Ct. 1966); Hut v. Antonio v. Guth, 95 N.J. Super. 62 (Law. Div. 1967). The cited exception is recognized by Prosser, who writes:
* * * In nearly all of the decided cases, this [condition] has amounted to either a public or a private nuisance, but this is clearly not essential. In such a case the vendor remains subject, at least for a reasonable time, to any liability which he would have incurred if he had remained in possession, for injuries to persons or property outside of the land, caused by such a condition. The reason usually given is the obviously fictitious one that by selling the land in such condition he has "authorized the continuance of the nuisance." A more reasonable explanation would appear to be merely that the vendor's responsibility to those outside of his land is regarded as of such social importance that he is not permitted to shift it, even by an outright sale. Prosser, Torts (3d ed 1964), § 62, at 409-10.
In Harper and James the discussion as to the vendor's liability for conditions on the land at the time of sale includes the following:
*214 If one negligently creates a condition on land which is unreasonably dangerous to outsiders, there is no particularly good reason why his potential liability should stop either when he transfers possession of that land or when his successor in occupancy becomes liable either because of his possession or because of his fault in negligently omitting to repair the danger. In such a case, the vendor's wrong is not the breach of a duty imposed upon him by reason of possession, as such  if he had created the same condition as a trespasser on the land he would be just as liable. The gist of the wrong is simply affirmative unreasonably dangerous conduct and his liability should have no limits except those which are generally imposed in such cases. And these limits do not include either the parting with the possession or the negligent omission of another to avert the threatened harm. If there is such omission, he who is guilty of it becomes concurrently liable with the one who created the danger. The reasoning set forth here reflects the view of the Restatement and the weight of judicial authority. Harper and James, Law of Torts, § 27.21, at 1537-32 (1956).
See also 2 Restatement, Torts 2d, § 373, at 276 (1965).
Zirbser argues that the exception in question extends only to artificial or man-made conditions on property, citing Salmon v. Delaware, Lackawanna & Western R.R. Co., 38 N.J.L. 5 (Sup. Ct. 1875); Brownsey v. General Printing Ink Corp., 118 N.J.L. 505 (Sup. Ct. 1937), and Ettl v. The Land and Loan Co., 122 N.J.L. 401 (Sup. Ct. 1939).
We find none of the cited cases to be apposite. Salmon involved liability for fire which started in an accumulation of leaves on a railroad right-of-way; Brownsey involved ice falling from a roof, and Ettl, sand being blown from defendant's property onto that of plaintiff. All were decided before the promulgation of subsection (2) of § 363 of the Restatement, by which a possessor was held subject to liability for the condition of trees which presented an unreasonable risk of harm to those using the adjacent public highway. 2 Restatement, Torts 2d, 258.
We see no reason why an owner who would be liable to a member of the public under the rule now firmly imbedded in subsection (2) above, should be absolved from liability by the simple act of the sale of his property. As we noted in Sarnicandro, supra, the boundaries of tort liability for dangerous *215 conditions on the land have gradually been extended by our courts in recent years. Justice Jacobs pointed in Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965) that:
The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected as they were step by step in Henningsen [Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358,] and Santor [Santor v. A. & M. Karagheusian, Inc., 43 N.J. 52]. We consider that there are no meaningful distinctions between Levitt's mass production and sale of homes and the mass production and sale of automobiles and that the pertinent overriding policy considerations are the same. (44 N.J. at 90)
We find no support in reason and logic for any distinction between the liability of a vendor of land in an urban area who erects a tower on his land which later falls into the highway and injures a pedestrian, and one who maintains a rotten tree on his land which later falls with the same result. The rationale which underlies his continued liability for a structure on his land would apply equally to a tree which is so close to a highway as to endanger traffic thereon should it fall. In this day and age, with its attendant increase in population, greater use of automobiles and more intense use of land, the presence of a rotten tree along a busy highway poses dangers greatly in excess of those with which the courts were confronted in the cases on which appellant relies. The obligation of reasonable inspection which may be involved if a vendor is to be held liable for dangerous conditions existing on his property at the time of its conveyance, is small when compared with the danger posed by a rotten tree poised over a busy highway. The fact that the vendor may have lost the right to go on the property and make repairs is beside the point  the rule is aimed at inducing him to make inspections and guard against dangers before conveyance. Pirozzi v. Acme Holding Company of Paterson, supra, 5 N.J. at 188.
*216 We accordingly hold that where an owner of land adjacent to a highway in an urban area, conveys his land, on which is located a tree which he knows, or should know, presents an unreasonable risk of injury to the public, he remains subject to liability for physical harm caused by such condition after his vendee has taken possession. If he has actively concealed the condition from the vendee his liability continues until the vendee discovers it and has reasonable opportunity to take effective measures against it, otherwise it continues until the vendee has had reasonable opportunity to discover the condition and to take such precautions. See 2 Restatement, Torts 2d, supra, §§ 363, 373, at 258, 276. In so holding we do not suggest that a tree planted or preserved by an owner may not constitute a nonnatural or artificial condition on land. Id. § 363, comment (b), at 258.
It was substantially on the foregoing basis that the trial judge, apparently relying upon the Restatement, Sarnicandro and Cavanaugh v. Pappas, submitted the issue of the liability of each of the prior owners to the jury. As noted above, the jury could have found that the church had not owned the property for a sufficient length of time to discover the danger posed by the tree and take precautions against it. Such a finding would have been consistent with its verdict against Greenbriar, the church's vendor.
Zirbser argues that, even under the law as charged by the court, the jury's verdict against it was so contrary to the weight of the evidence as to mandate the granting of its motion for a new trial. We agree. The jury was instructed that the vendor's liability continued for a reasonable time only. The conclusion, implicit in the jury's verdict, that a reasonable time had not elapsed is belied by the facts. The active management of Zirbser was in the hands of the two brothers, Edward and Paul Zirbser. In the absence of direct proof that either had actual knowledge of the condition of the tree, Zirbser's liability depended upon its being chargeable, through them, with knowledge that at the time of the conveyance, the tree posed an unreasonable risk of injury to *217 persons on the adjacent highway. In such case its liability would have continued for a reasonable time, i.e., until its vendee had a reasonable opportunity to discover the condition and take effective precautions against it. Implicit in the jury's verdict against Greenbriar was a finding that its officers (who were also the two brothers) knew or should have known of the condition during the 11 months of its ownership of the property. Once they knew of it, and a reasonable time to guard against it had passed, Zirbser's liability would have come to an end. It follows that Zirbser's motion for a new trial should have been granted.

III
By her cross-appeal plaintiff challenges the trial judge's denial of her motion for a new trial as to damages, contending that, on the undisputed testimony, the amount awarded by the jury is so inadequate as to amount to a manifest denial of justice. R. 2:10-1. Greenbriar has filed no brief in opposition.[1] Zirbser argues that the verdict, although on the low side, is not so inadequate as to mandate a new trial as to damages. It reasons that the jury could have found that decedent was contributing from four to five thousand dollars to the support of his family and that $5,000 annually, capitalized at 5% for the period of his work (as distinguished from his life) expectancy, would sustain a verdict of $85,000.
We are satisfied that the amount of the verdict clearly and unequivocally evidenced a miscarriage of justice which mandated that the motion for a new trial be granted. Dolson v. Anastasia, supra, 55 N.J., at 7. Decedent was a 22-year-old chemical engineer, had graduated from Clarkson College of Technology eight months before, and was employed by Texaco at its Westville refinery at an annual salary of *218 $9,300. He left a 24-year-old wife and a son seven months old. All were in good health.
Considered in the light most favorable to defendants, the amount awarded indicates that the jury found that decedent's total contributions to his wife and child out of his $9,300 salary would not have exceeded $5,000 annually for the 43 year period of his work expectancy  and would have ceased for the remaining four years of his 47 year life expectancy. Of necessity, this finding would be sustainable only on the assumption that his salary remained at $9,300 during that period. It is inconceivable under the proofs that the annual salary of a chemical engineer, employed by a large corporation such as Texaco, would never exceed his first year's salary.
We find nothing in the record to sustain the suggestion that the verdict was a compromise. On the contrary, the finding as to liability was well supported and the separate trial as to damages would indicate the contrary.
The judgment in favor of plaintiff and against defendant Zirbser Brothers, Inc. is accordingly reversed and the case remanded for a new trial as to all issues, including damages, subject to such motions for judgment in its favor as may be made by that defendant at the close of the evidence. The judgment in favor of plaintiff and against defendant Zirbser-Greenbriar, Inc. is set aside as to damages only, and the case remanded for a new trial as to that issue. The judgment in favor of defendant St. Stephen's Lutheran Church of Woodbury and against plaintiff is affirmed.
NOTES
[1] Cross-appellant's brief was filed December 24, 1969. By an order dated March 11, 1970 Zirbser-Greenbriar, Inc. was directed to have its brief filed by March 25, 1970. It failed to file any brief thereafter.