**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0643-22

JASON SHARP,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued September 18, 2024 – Decided October 7, 2024

Before Judges Rose and DeAlmeida.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS. No. xx0624.

Samuel M. Gaylord argued the cause for appellant (Szaferman, Lakind, Blumstein & Blader, , attorneys; Samuel M. Gaylord, on the brief).

Robert J. Papazian argued the cause for the respondent (Gebhardt & Kiefer, PC, and Nels J. Lauritzen, Deputy Director of Legal Affairs, attorneys; Thomas R. Hower, Staff Attorney, on the brief).

PER CURIAM

Appellant Jason Sharp appeals from the September 16, 2022 final agency decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System denying his application for accidental disability retirement benefits. We affirm in part, vacate in part, and remand.

I.

The facts are not in dispute. On May 25, 2019, Sharp was employed by Camden County as a corrections officer. He was assigned to perform his regular duties at the Camden County Correctional Facility serving meals to inmates in the special needs unit. Sharp was working with two other officers and a sergeant.

The officers arrived at the cell of an inmate who appeared to be aggravated. Because of the inmate's condition, Sharp attempted to pass the inmate's meal through a pass-through door cut into the cell door. At the time, Sharp was holding ten Styrofoam trays of food, five in each hand. The sergeant was unable to open the pass-through door with a key.

The sergeant decided to open the cell door to permit Sharp to deliver the meal. The sergeant did not follow protocol requiring her to call for back-up

A-0643-22

officers or a reaction team to assist in controlling the inmate after the cell door was opened. When she opened the cell door, the inmate charged out of the cell.

The three officers tried to push the inmate back into the cell. As they attempted to close the door, they realized it was locked in the open position. The door bounced back open and the inmate charged out a second time. Sharp dropped the food trays and engaged in a struggle with the inmate.

The officers brought the inmate to the ground. As Sharp attempted to pin one of the inmate's arms, the sergeant pepper sprayed the inmate, who jerked and tensed up, attempting to pull his hands up to cover his face. At that time, Sharp heard and felt a pop in his left shoulder. He held the inmate down until assistance arrived. It is undisputed that the injury to Sharp's shoulder rendered him totally and permanently disabled from the performance of his duties as a corrections officer.

Sharp thereafter applied for accidental disability retirement benefits. The Board denied Sharp's application, finding that the event that caused his disability was not a traumatic event within the meaning of the relevant statute because his physical engagement with the inmate was not undesigned and unexpected, but an expected responsibility of a corrections officer. The Board awarded him ordinary disability retirement benefits.

A-0643-22

After an appeal, the Board transmitted the matter to an Administrative Law Judge (ALJ) for a hearing. Following testimony, Sharp argued that three undesigned and unexpected events were traumatic events that directly caused his disability, qualifying him for accidental disability retirement benefits: (1) the inoperable pass-through door; (2) the cell door bouncing back open because it was locked in the open position; and (3) the sergeant's failure to call for assistance prior to opening the cell door.

In an initial decision, the ALJ recommended the Board deny Sharp accidental disability retirement benefits. The ALJ found the three events on which Sharp relied were not the direct cause of his disability and could not, therefore, be the basis on which to award him accidental disability retirement benefits. The ALJ explained:

> Here, the traumatic event was the petitioner's interaction with the attacking inmate. The traumatic event was not the unexpected issue with the pass-through door, the unexpected issue of the cell door bouncing back because it was in the locked position, or the failure of the sergeant to follow proper protocol and call for back-up prior to entering the cell. While those three events may have been undesigned and unexpected on that day, the fact that those three events were undesigned and unexpected is not the controlling issue. They were simply events that led up to the interaction with the attacking inmate. The controlling issue is whether the traumatic event, which was the petitioner's interaction with the attacking inmate, and having to

4

restrain that attacking inmate, was undesigned or unexpected.

The ALJ found that no "unexpected happening" resulted in Sharp's disability. According to the ALJ, Sharp "stated that he assisted in restraining an inmate. This is part of his job and expected as a corrections officer in a prison setting." The ALJ noted that restraining inmates is listed in the job description of corrections officers and that Sharp received training in controlling inmates through physical force. He continued, Sharp "was employed at a corrections facility, and it is reasonable to believe that an inmate would lash out, be involved in altercations, and that petitioner would have to intervene."

On September 16, 2022, the Board issued a final agency decision adopting the recommendation of the ALJ and denying Sharp's application for accidental disability retirement benefits. This appeal followed.

Sharp reiterates his argument that the three events he identified were traumatic events that directly resulted in his disability. In addition, he argues that the Board erred by applying an overly narrow interpretation of the disability retirement statutes and the precedents applying those statutes.

II.

Our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208

N.J. 182, 194 (2011). An agency's determination must be sustained "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result . . . .'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Id. at 99.

"[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43

6

(2008). To qualify for accidental disability retirement benefits, an employee has the burden to prove that he or she is

> permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.
>
> [N.J.S.A. 43:16A-7(a)(1).]

The statute and decades of precedents interpreting its provisions were examined by the Supreme Court in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007). As we explained in Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346, 348 (App. Div. 2014), the Richardson Court "found that in using the term 'traumatic event,' the Legislature did not mean generally to raise the bar for injured employees to qualify for accidental disability pensions." (citing Richardson, 192 N.J. at 210-11). "Rather, the Legislature intended 'to excise disabilities that result from pre-existing disease alone or in combination with work effort from the sweep of the accidental disability statutes and to continue to allow recovery for the kinds of

unexpected injurious events that had long been called 'accidents.'" Ibid. (citing

Richardson, 192 N.J. at 192).

The Richardson Court established new standards for determining whether

an employee was disabled as a result of a traumatic event within the meaning of

the statute and, as a result, is entitled to accidental disability retirement benefits.

The Court held that "a traumatic event is . . . an unexpected external happening

that directly causes injury and is not the result of pre-existing disease alone or

in combination with work effort." Richardson, 192 N.J. at 212.

> [T]o obtain accidental disability benefits, a member
> must prove:
>
> 1.    that he [or she] is permanently and totally
> disabled;
>
> 2.    as a direct result of a traumatic event that is
>
>   a.    identifiable as to time and place,
>
>   b.    undesigned and unexpected, and
>
>   c.    caused by a circumstance external to the
>     member (not the result of pre-existing
>     disease that is aggravated or accelerated by
>     the work);
>
> 3.    that the traumatic event occurred during and as a
> result of the member's regular or assigned duties;
>
> 4.    that the disability was not the result of the
> member's willful negligence; and

8

> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [Id. at 212-13.]

We have carefully reviewed the record in light of these precedents and find no basis on which to reverse the Board's determination that the three events identified by Sharp – the inoperable pass-through door, the cell door locked in the open position, and the sergeant's failure to follow protocol – did not directly result in his disability. Those events preceded the physical encounter with the inmate that caused the injury to Sharp's shoulder which directly resulted in his total and permanent disability. Those events, therefore, cannot satisfy the "traumatic event" element of the statute, even though they may have been undesigned and unexpected. We, therefore, affirm the Board's decision to the extent it rejected Sharp's claim that the three events preceding his physical encounter with the inmate were traumatic events qualifying him for accidental disability retirement benefits.

We are constrained, however, to vacate the Board's denial of Sharp's application for accidental disability retirement benefits and remand the matter for the Board to determine in the first instance whether a principled legal distinction can be made between the facts of this case and those in Richardson,

9

where the Supreme Court found a corrections officer entitled to accidental disability retirement benefits for an injury he suffered while subduing an inmate. We discuss the holding in Richardson to guide the Board's analysis on remand.

Richardson was a corrections officer at a State prison. Id. at 193. When an inmate became violent, two officers sent an emergency signal for assistance. Ibid. Richardson and another officer responded. Ibid.

> The officers attempted to subdue the inmate so they could handcuff him behind his back. They succeeded in wrestling the inmate to the ground on his stomach and contained his arms under his chest. Richardson straddled the inmate to hold him down, but the inmate continued to struggle by kicking, punching, and throwing his body around. A colleague attempted to hand Richardson his handcuffs. As Richardson was reaching for the handcuffs, the inmate pulled his arm loose and forcefully jerked up from the ground, knocking Richardson backward. The force caused Richardson to fall back onto his left hand and hyper-extend his wrist.
>
> [Ibid.]

Richardson's injury resulted in his total and permanent disability from performing his duties as a corrections officer. Ibid.

The Board denied Richardson's application for accidental disability retirement benefits and instead awarded him ordinary disability retirement benefits. Ibid. Although the Board found Richardson totally and permanently

disabled as a direct result of the encounter with the inmate, it determined that he did not suffer a traumatic event as required by the statute. Id. at 194. At a subsequent hearing, two officers testified that the inmate's violent resistance was not part of the normal course of a corrections officer's duties. Ibid. "Nonetheless, the ALJ determined that the . . . incident did not constitute a traumatic event, because Richardson's response was part of the ordinary duties of a corrections officer. The Board adopted that decision." Ibid. We affirmed. Ibid.

The Supreme Court reversed. Ibid. After establishing the standards set forth above for determining whether an employee was disabled as a direct result of a traumatic event, the Court explained that "not every case will require a great rush of force" to qualify for accidental disability retirement benefits. Id. at 213. "Indeed, no particular amount of force is necessary, and no gravitational force analysis is implicated in the traumatic event standard." Ibid. "Thus, a member who is injured as a direct result of an identifiable, unanticipated mishap has satisfied the traumatic event standard." Ibid. The Court continued:

> By way of example, a police officer who has a heart attack while chasing a suspect has not experienced a traumatic event. In that case, the work effort, alone or in combination with pre-existing disease, was the cause of the injury. However, the same police officer, permanently and totally disabled during the chase

11

because of a fall, has suffered a traumatic event. Similarly, the gym teacher who develops arthritis from the repetitive effects of his work over the years has not suffered a traumatic event. His disability is the result of degenerative disease and is not related to an event that is identifiable as to time and place. On the contrary, the same gym teacher who trips over a riser and is injured has satisfied the standard.

[Ibid.]

Applying the new standards to the circumstances that led to Richardson's injury, the Court held:

The Board contends that because subduing an inmate is part of the anticipated work of a corrections officer and was not unexpected or unintended, Richardson cannot satisfy the traumatic event standard. That is a misreading of the statute, which requires that the traumatic event occur "during and as a result of the performance of [the member's] regular or assigned duties."

[Ibid.]

The Court provided examples of traumatic events that could arise during ordinary work effort and qualify the employee for accidental disability retirement benefits:

A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court. Each of those examples . . . meets the traumatic event standard.

[Id. at 214.]

"In sum, the fact that a member is injured while performing his ordinary duties does not disqualify him from receiving accidental disability benefits; some injuries sustained during the ordinary work effort will pass muster and others will not." Ibid. The Court thus concluded:

> Given the clarified test for traumatic event expressed above and our discussion of work effort, Richardson satisfied the accidental disability statute. While performing the regular tasks of his job as a corrections officer, subduing an inmate, Richardson was thrown to the floor and hyperextended his wrist . . . . The occurrence was . . . unexpected and undesigned . . . . In short, Richardson suffered a traumatic event.

[Id. at 214-15.]

Here, after rejecting Sharp's argument that the three events preceding his physical encounter with the inmate were traumatic events, the Board found that he was not entitled to accidental disability retirement benefits because restraining an inmate was a regular duty of a corrections officer. However, as the Court explained in Richardson, the fact that the triggering event occurred during the performance of the regular duties of the employee is not a basis on which to deny accidental disability retirement benefits. To the contrary, the statute requires that the triggering event occur while the employee is performing

13

his or her regular or assigned duties. The correct inquiry is whether the triggering event – the event that directly resulted in the employee's permanent and total disability – was undesigned and unexpected.

In <u>Richardson</u>, the triggering event was not the officer's physical encounter with an inmate. Instead, the qualifying traumatic event happened when, with the inmate on the ground and straddled by Richardson, the officer reached for handcuffs and was knocked backward because the inmate pulled his arm loose and forcefully jerked up from the ground. Here, Sharp was injured when, with the inmate on the ground and Sharp attempting to pin one of the inmate's arms, another officer pepper sprayed the inmate, who jerked and tensed up, attempting to pull his hands up to cover his face. The two incidents have numerous similarities. Yet, the Board's decision, which adopted the ALJ's recommendation, contains no analysis of how the events leading to Sharp's injury meaningfully differ from those before the Court in <u>Richardson</u>, where the officer was found eligible for accidental disability retirement benefits.

"[A]n articulation of reasons is essential to the fair resolution of a case." <u>Schwarz v. Schwarz</u>, 328 N.J. Super. 275, 282 (App. Div. 2000). Effective appellate review requires examination of the findings of fact and conclusions of law supporting the decision. <u>Raspantini v. Arocho</u>, 364 N.J. Super. 528, 533

14

(App. Div. 2003).  In the absence of the Board's explanation for why it decided the holding in <u>Richardson</u> does not require that Sharp's application for accidental disability retirement benefits be granted, we cannot determine whether that decision is entitled to our deference.  We note that the record in <u>Richardson</u> contained testimony from two witnesses that the violent resistance encountered by Richardson was not part of the normal course of his duties.  192 N.J. at 194.  It appears that there was no testimony before the ALJ in this matter with respect to whether the inmate who injured Sharp was violently resisting in a manner not normally encountered by corrections officers.  If the Board determines that such testimony is necessary for a proper analysis of whether the holding in <u>Richardson</u> requires that Sharp be awarded accidental disability retirement benefits, it may transmit the matter to an ALJ for a supplemental hearing.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION