Erwina Edgett et al., Respondents, *v.* State of New York, Appellant. (Claim Nos. 32969, 32970.)

Third Department, April 29, 1959.

*Louis J. Lefkowitz, Attorney-General* (*Harry Silvers* and *Paxton Blair* of counsel), for appellant.

*Joseph P. Leary* for respondents.

HERLIHY, J. On October 15, 1955, at about 10:00 P.M., while driving on Route 28 in the County of Otsego, a large limb fell from a tree (which was on the right of way of the State) striking the automobile in which the claimants were riding and causing serious injuries.

There is no claim that the claimants were guilty of contributory negligence and the record substantiates such fact.

The State contends: 1. The limb fell as the result of an unprecedented storm (Hurricane Hazel); 2. There was no notice, actual or constructive, to the State of the defective condition of the tree and limb; 3. The State was not negligent.

As to the first contention (unprecedented storm) the State produced documentary evidence that a new wind record was established in Binghamton, New York, approximately 70 miles from the scene of the accident, and that there was wind of unusual high velocity at Albany, New York, 75 miles distant, at the approximate time of the happening of the accident. A State employee in charge of Otsego County testified that there were 35 trees down in the county, but he gave no testimony as to the alleged storm, the time it occurred, its velocity or other salient facts. There were witnesses who testified that while it had been raining earlier, at the time the accident happened it was clear and one of the witnesses for the State stated that there was no storm as he drove a matter of five or six miles up to where the accident happened; that there was supposed to be a " special storm " but it did not materialize. Another witness who took the claimants to the hospital at Cooperstown (15 miles) testified he was driving 80 to 90 miles an hour and there were no obstructions in the road. We conclude that the court had a right to accept the testimony of the witnesses as to the existing conditions at the time and place of the accident. If negligence was proved against the State (and we think it was) the unprecedented storm (if there was one) was no absolute defense. In *Daly* v. *State of New York* (226 App. Div. 154, 157) the court said: " The exercise of ordinary care requires precaution as well against the extraordinary as against the ordinary. It is only the unforseeable in the exercise of ordinary care, or the act of God, that

exculpates the negligent wrongdoer. (*Crowley* v. *State,* 99 App. Div. 52; 112 id. 872.) "

In *Branch* v. *State of New York* (284 App. Div. 825) which happened at Warrensburg, New York, there was substantial evidence as to the velocity of the unusual storm at the *time* and *place* where the tree fell and a further question as to whether the tree was in the right of way of the State. There was a finding of no actual or constructive notice.

As to the question of notice, a witness for the claimants testified that in 1949 he went to the local office of the State Highway Department and told them that "the tree was in bad condition and needed at least trimming and should be removed".

There was a crotch in the tree [1949] from which extended four branches of varying length and dimensions. About the time the witness made the complaint, a small dead limb fell from the tree. In either July or August of 1952, a large branch fell, from the same location in the tree, along the right of way and on the property of the adjacent owner where it remained for some time before being cut and removed. The State employees testified that on July 28, 1952, the trees in the location here in question had been inspected and that in September of 1953 the trees in the vicinity were trimmed; that they had never observed where the branches had fallen from the crotch in the tree or the condition existing thereat. Witnesses living near the tree testified that evidence of decay could be seen and that birds were living where the branches had fallen. While the outside of the branch was covered by bark and there were some leaves on the branch itself, the inside was in a poor state of decay and an examination of the crotch showed even greater evidence of a defective tree. The court found that the State had actual and constructive notice.

The State relies upon two cases which are distinguishable.

In *Mosher* v. *State of New York* (191 Misc. 804, 807, affd. 275 App. Div. 891) there was no evidence of actual notice and a finding of insufficient evidence of constructive notice and further "the limb [which fell] did not overhang the roadway" and "it is obvious that the limb would not have merited as close attention as if it had overhung the roadway". In the present case there is no dispute that the limb overhung the road.

In *Rose* v. *State of New York* (282 App. Div. 1099) the claim was dismissed but there the tree "Before falling it had stood outside the boundaries of the State right of way" and there was no evidence of actual knowledge or complaint made to the State.

In contrast to the above, the following cases favored the claimants.

In *Julian* v. *State of New York* (187 Misc. 146, 148) the court, after conceding there was no actual notice to the State, said: "Nevertheless, the condition was of long standing and was readily discernible from the highway. A casual passerby might not have noticed it or given it any thought if he had noticed it, but the highway patrolmen, instructed, as the evidence shows, to report defective conditions in trees along the road, ought to have discovered it in the exercise of reasonable diligence."

In *Lapchenko* v. *State of New York* (2 Misc 2d 478, 480 [1956]) the court said it was the duty of the State to make reasonable inspection of trees along its highways and to trim or remove them or portions which constitute a danger to users of the highway and that its failure to discover and remove the obstruction in that case constituted negligence and was a proximate cause of the accident.

In *Goranson* v. *State of New York* (3 Misc 2d 1020 [1956]), an award was made to the claimant where the facts are strikingly similar to the present case.

In *Kemp* v. *State of New York* (9 Misc 2d 781 [1958]) in making an award to the claimants it was stated that where the State has actual or constructive notice, it may be held liable for permitting defective or dangerous trees to remain where they will cause injury to the users of the highway or adjacent property owners. (See, also, *Fitzgerald* v. *State of New York,* 198 Misc. 39.)

It has been held in the appellate courts that the State is liable for "defective shoulder" (*Goodwin* v. *State of New York,* 298 N. Y. 873); "depression in highway and lack of proper warning signs" (*Cooper* v. *State of New York,* 298 N. Y. 663); "defective guard rail rotted and decayed" (*Sanders* v. *State of New York,* 298 N. Y. 850); "removal of stop sign at intersection" (*Eastman* v. *State of New York,* 303 N. Y. 691); "loose Belgian block which constituted part of the highway" (*Trabisco* v. *City of New York,* 280 N. Y. 776).

We are asked to affirm the findings of fact of the Court of Claims which predicated negligence on the part of the State resulting from a defective tree and branch thereof on its right of way and from an examination of the record and exhibits we are satisfied that there is substantial and credible evidence to sustain the findings. That a tree is involved should not change the general rules. If a defective overhead bridge caused damage to an automobile passing thereunder, we would not hesitate to affirm, assuming all of the necessary elements of notice, *et cetera,*

were proven. The State has been held liable for falling rocks from an overhead ledge. (*Doulin* v. *State of New York,* 251 App. Div. 767, affd. 277 N. Y. 558.) A tree owned by the State with branches overhanging the highway constitutes potential danger to the traveling public and the duty to properly inspect and correct by trimming or removal is essential to proper maintenance. In reaching this conclusion, we are mindful that each case and resulting decision must be governed by its own peculiar facts and circumstances. Findings having been made for claimants we cannot say they were against the weight of evidence in fact or in law.

The question of the computation of interest was decided by this court in *Sletten* v. *State of New York* (282 App. Div. 751 [1953]).

The judgments appealed from should be affirmed, with costs to the respondents.

FOSTER, P. J., and BERGAN, J. (dissenting). The undisputed proof is that there were 35 trees and 252 tree limbs blown down on October 15, 1954 in Otsego County; that there was a general storm of hurricane proportion throughout the northeast section of the country; and that the recorded observations at two weather bureau stations, 140 miles apart, between which the site of the accident is located, showed maximum winds ranging from 42 to 94 miles an hour. Mere conclusions of witnesses based on general recollections that they noticed no unusual storm are of no substance against such documented proof of existence of a storm of great magnitude. It is incredible that with proof of a contemporaneous generalized storm with manifest effect on a number of trees in the same county that this particular tree would have been exempt from the effects of high winds. It would be unreasonable to impose liability on the State for a tree limb blowing down in such a general storm. An Act of God has been shown in the record.

Even if there had been no such storm, liability has not been demonstrated. The limb that blew down was alive; it was fully leaved and presented a normal bark exterior. No such notice of danger from the limb that fell previously has been shown which would require the State in the exercise of due care to cut down such a limb as the one here involved. That one limb of a tree may have fallen does not require the owner at the risk of liability to expect that every other limb, whether or not sound in appearance, will come down. The record does not demonstrate the State's liability as a matter of law. The judgments should be reversed and the claims dismissed.

Coon and Reynolds, JJ., concur with Herlihy, J.; Foster, P. J., and Bergan, J., dissent in a memorandum and vote to reverse the judgments and dismiss the claims.

Judgments appealed from affirmed, with costs to the respondents.