J-A18033-23

2025 PA Super 30

| | | |
|---|---|---|
| JAMES HARRIS, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DANIELLE M. FELOUZIS | : | |
| | : | |
| Appellant | : | No. 85 WDA 2023 |

Appeal from the Judgment Entered March 22, 2023
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10649-2020

BEFORE:  BENDER, P.J.E., LAZARUS, P.J., and KUNSELMAN, J.

OPINION BY KUNSELMAN, J.:                    **FILED: February 10, 2025**

## I.    Introduction

In this case, the Defendant, Danielle M. Felouzis allowed a 110-year-old tree to grow unaltered on a steep hillside, above an urban highway.  The jury deemed that to be a dangerous condition and that her neglect proximately caused harm to James Harris, Jr., when the tree plummeted onto his vehicle. Like the two trial judges who presided over this matter in the Court of Common Pleas of Beaver County, we hold that whether a landowner unreasonably permits a tree to grow in a dangerous condition, near an urban highway, is a factual question for the jury.  Thus, we affirm the judgment in favor of Mr. Harris.

## II.    Factual & Procedural Background

In June 2015, Ms. Felouzis purchased a residential property in the City of Aliquippa, Pennsylvania from her parents, who had acquired it from her grandparents.  The last parcel on a no-outlet street, Ms. Felouzis's new home had a yard on its southern side that led to a precipitous drop down a hill.  The

slope, densely wooded, was so "steep and dangerous" that she "never walked on that [part of her] property . . . ." N.T., 3/29/22, at 175. Below that steep and dangerous hillside runs Kennedy Boulevard, a busy, four-lane highway, through "the heart of Aliquippa." *Id.* at 156. The portion of the highway nearest Ms. Felouzis's property contains businesses, the fire department, and other municipal buildings.

Despite the inherent, potential threat Ms. Felouzis's trees posed to the structures and vehicles on Kennedy Boulevard, she allowed the trees to grow unchecked. Ms. Felouzis never stopped her car to inspect the trees when riding along Kennedy Boulevard, even though she "drove it twice a day for 20 years." *Id.* at 176. Nor did she ever hire landscapers, tree-trimmers, or arborists to inspect her trees. *See id.* at 175.

She did, however, look up at the hillside as she drove past it. In doing so, Ms. Felouzis observed "tree branches, trunks, [and] limbs . . . lying on the hillside" for as long as she could remember. *Id.* at 178. Thus, she knew that her trees regularly fell down the hill toward the public highway.

Then, on June 14, 2019, while Mr. Harris drove on Kennedy Boulevard, a 110-year-old oak tree's roots gave way on Ms. Felouzis's hillside. The old oak "came down right on top of [Mr. Harris's] car" and demolished it. *Id.* at 148. He swerved left and hit a beer truck, parked on the other side of the four-lane highway. Mr. Harris suffered a broken neck, bleeding on the brain, and a punctured hand. *See id.*

He filed suit against Ms. Felouzis and alleged negligence. At the close of discovery, Ms. Felouzis moved for summary judgment, which the Honorable James J. Ross denied in an order and accompanying opinion. The matter then proceeded to a jury trial before the Honorable Deborah L. DeCostro.

At the close of Mr. Harris's case-in-chief, Ms. Felouzis moved for the entry of a compulsory nonsuit. She contended that the law required Mr. Harris to establish "that the tree was in an unreasonably dangerous condition because of a defect." N.T., 3/30/22, at 18-19. In her view, Mr. Harris offered no evidence that the tree was defective or that Ms. Felouzis could have discovered any visible defect had she inspected the tree. **See id.** at 20-21. However, Ms. Felouzis's counsel said he was "not suggesting . . . that [Mr. Harris] needs an expert [witness,] although **Dunlap**[1] does indicate that." **Id.** at 26. As such, Ms. Felouzis conceded that Mr. Harris could rely solely upon lay witnesses to establish his cause of action.

The trial court denied the motion for nonsuit, because whether the tree was growing in "a dangerous condition – as opposed to a defective condition – is a question that the jury could decide based upon the evidence that's here." **Id.** at 29.

Next, Ms. Felouzis put on a defense, during which she called Arborist Walter Jarosh as an expert witness. He had studied the fallen tree more than a year after the incident. Based on the rings of its trunk, Mr. Jarosh opined

---

1 **See Dunlap v. Ridley Park Swim Club**, 3199 EDA 2014, 2015 WL 6667763 (Pa. Super. 2015) (unpublished).

that the oak would have appeared "healthy among all the other trees in the woods" prior to it falling onto Mr. Harris's vehicle. ***Id.*** at 59.

Despite Mr. Jarosh's testimony, the jury found Ms. Felouzis negligent. She moved for judgment notwithstanding the verdict ("JNOV"), and Judge DeCostro denied post-trial relief. Ms. Felouzis immediately filed her notice of appeal.[2]

### III. Analysis

Ms. Felouzis raises three appellate issues as follows:

1.  When a cause of action is pursued against the owner of land for damages that were sustained off of the land arising from allegations pertaining to a dangerous tree, does [plaintiff]

_____

[2] Upon receiving Ms. Felouzis's notice of appeal, this Court issued her a rule-to-show-cause order. Therein, we asked whether we should quash, given that she erroneously appealed from two orders: *i.e.*, the order denying summary judgment and the order denying post-trial relief. ***See General Electric Credit Corp. v. Aetna Casualty & Surety Co.***, 264 A.2d 448, 470 (Pa. 1970) (noting that appeals from multiple orders are impermissible under the Pennsylvania Rules of Appellate Procedure). We further explained that an appeal following a jury verdict only lies from a final judgment entered, not the order denying post-trial relief. ***See, e.g.***, ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

The next day, Ms. Felouzis praeciped for judgment. However, that judgment did not contain a damage award, as would be typical in a personal injury case, where, as here, the jury found in favor of the plaintiff. Prior to trial, the parties agreed upon the damages amount. Thus, the two issues at trial were (1) whether Ms. Felouzis's conduct regarding the tree was negligent and (2) whether her negligence caused Mr. Harris's harm. ***See*** Verdict Slip. Because the question of damages was not in issue below, the judgment as entered, declaring Ms. Felouzis negligent without awarding damages, is final; it disposes of all the parties' claims. Therefore, the judgment, as entered, vested our appellate jurisdiction, notwithstanding Ms. Felouzis's procedural error in her notice of appeal. ***See Johnston the Florist***, ***supra***.

need to identify what defect the tree had that caused it to be dangerous before there is a right to recover?

2.  When a cause of action is pursued against the owner of land for damages that were sustained off of the land arising from allegations pertaining to a dangerous tree, does [plaintiff] need to establish that the dangerous condition could have been revealed through the exercise of reasonable care before there is a right to recover?

3.  When a cause of action is pursued against the owner of land for damages that were sustained off of the land arising from allegations pertaining to a dangerous tree, is expert testimony needed to establish that through visual inspection the owner of the land would have been able to determine that a tree was dangerous before there is a right of recovery?

Felouzis's Brief at 8.

We address the first two issues simultaneously, because they essentially ask whether, as a matter of law, Mr. Harris presented sufficient evidence that Ms. Felouzis negligently allowed the tree that injured him to grow, unaltered, upon her urban property. We then discuss the third issue.

In the argument section of her brief, Ms. Felouzis does not focus upon each motion from the trial court individually. *See, e.g.*, Felouzis's Brief at 15-18 (arguing the denial of summary judgment in same section as denial of post-trial relief). Instead, she combines them under various headings on Mr. Harris's alleged lack of evidence. For ease of disposition, we focus upon each motion in the order that it arose below.

*A.    Summary Judgment*

First, we consider the order denying Ms. Felouzis's motion for summary judgment.

"This Court has held that where, as here, a summary judgment motion is based on the sufficiency of the evidence to prove the plaintiff's claims, once a case goes to trial and evidence is presented at trial, the denial of summary judgment is moot, and the sufficiency of the evidence must be analyzed based on the trial record." ***Xtreme Caged Combat v. Zarro***, 247 A.3d 42, 50–51 (Pa. Super. 2021), *appeal denied*, 260 A.3d 924 (Pa. 2021) (citing ***Whitaker v. Frankford Hospital of City of Philadelphia***, 984 A.2d 512, 517 (Pa. Super. 2009)). "No decision has overruled ***Whitaker***, and it therefore remains binding precedent." ***Xtreme Caged Combat***, 247 A.3d at 51 n.7.

We recently granted *en banc* review in ***Coryell v. Morris***, \_\_\_\_ A.3d \_\_\_\_, 2025 WL 350505, 1977 EDA 2021 (Pa. Super. 2025) (*en banc*), to determine if this holding is correct. We held that it was. ***See id.***, Slip Opinion at 6-8.

Accordingly, after the trial begins, the order denying summary judgment is not reviewable. We dismiss any arguments by Ms. Felouzis regarding her motion for summary judgment based on a claim of insufficient evidence as moot.

B.    *Post-Trial Relief*

Next, we consider the order denying Ms. Felouzis's motion for post-trial relief. Among other claims therein, she contended the trial court erroneously refused to impose a nonsuit at the close of Mr. Harris's case-in-chief, because Ms. Felouzis believed she was entitled to judgment as a matter of law. ***See*** Felouzis's Motion for Post-Trial Relief at 6-9. She also raised a new theory in her post-trial motion – *i.e.*, that the trial court should have granted her a

nonsuit, because Mr. Harris failed to call an expert witness to prove that the tree was defective. *See id.* at 9-12. Thus, Ms. Felouzis sought JNOV.

JNOV "should be entered only in a clear case, and any doubts should be resolved in favor of the verdict winner." ***Burns v. City of Philadelphia***, 504 A.2d 1321, 1325 (Pa. Super. 1986).

When reviewing an order denying JNOV, our scope of review requires us to "consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." ***Corvin v. Tihansky***, 184 A.3d 986, 990 (Pa. Super. 2018). Because Ms. Felouzis seeks judgment as matter of law, her first two issues present purely legal questions. As such, our standard of review is *de novo*. ***See id.***; ***see also Foster v. Maritrans, Inc***., 790 A.2d 328, 330 (Pa. Super. 2002).

"There are two bases upon which JNOV can be entered; [(1)] the movant is entitled to judgment as a matter of law and/or [(2)] the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Kelly v. Carman Corp.***, 229 A.3d 634, 647 (Pa. Super. 2020) (some punctuation omitted). Ms. Felouzis relies upon the first basis for JNOV in this appeal. Hence, she must convince us that "even with all factual inferences decided adverse to [her], the law nonetheless requires a verdict in [her] favor." ***Id.***

Ms. Felouzis argues that ***Barker v. Brown***, 340 A.2d 566 (Pa. Super. 1975) (*en banc*) required Mr. Harris to prove that the oak tree which injured him was (1) defective and (2) that Ms. Felouzis would have discovered that

- 7 -

defect had she inspected the tree. She believes Mr. Harris "could not offer any insight about the condition of the oak tree before it uprooted." Felouzis's Brief at 10. In short, she says that, without proof of a defect, Mr. Harris cannot establish a cause of action for negligence. We disagree.

The "elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. 2003). Negligence is carelessness; we define it "as the absence of care under the circumstances." *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 250 (Pa. Super. 2014) (citing *Brusis v. Henkels*, 102 A.2d 146, 148 (Pa. 1954) (some punctuation omitted). "While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury." *Id.*

The deductive power of jurors is the lifeblood of the negligence test. A jury's sense of community mores and customs animates the legal figment by which negligence is measured – the so-called, "reasonably prudent person." Jurors "determine how a reasonably prudent person would act in [given] circumstances." *Stewart v. Motts*, 654 A.2d 535, 540 (Pa. 1995). As such, when the law of torts uses the terms "reasonable," "reasonableness," or "unreasonable," one should read those words to mean in the judgment of the jury.

The Supreme Court of Pennsylvania has long held that "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion

may be based." **Smith v. Bell Tel. Co. of Pa.**, 153 A.2d 477, 479 (Pa. 1959). This "does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, **the very heart of the jury's function.**" **Id.** (emphasis added). It also does not mean that the jury's "conclusion must be the **only** one which logically can be reached." **Id.** at 479-80 (emphasis in original). The law only requires "that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff . . . ." **Id.** at 479.

With these fundamentals in mind, we turn to one of the earliest reported cases on falling trees. Thirty years after automobiles appeared on American streets, the United States Court of Appeals for the Third Circuit held, on facts nearly identical to this case, that "the question of alleged negligence of the defendant [landowner] was for the jury to pass upon." **Brandywine Hundred Realty Co. v. Cotillo**, 55 F.2d 231, 231 (3d Cir. 1931).

There, Mr. Cotillo drove his vehicle on a Delaware highway,[3] "on which a tract of suburban forest abutted . . . ." **Id.** As he passed the corporate defendant's land, an average gust of wind "blew [a] tree down. It struck the automobile, damaged it, injured the plaintiff, and killed his companion." **Id.**

---

[3] We note that **Brandywine Hundred Realty Co. v. Cotillo**, 55 F.2d 231, 231 (3d Cir. 1931) is seven years older than **Erie Railroad Co. v. Tompkins**, 304 U.S. 64 (1938) (holding that the Constitution of the United States did not establish a general, federal common law). Thus, the **Brandywine** Court did not apply Delaware law, even though the plaintiff's cause of action arose in that state. Instead, it announced the Third Circuit's view of the common law.

Although the "tree had been dead for four years, [it] bore no exterior evidence of decay." *Id.* Mr. Cotillo sued the landowner, which moved for judgment as a matter of law. The district court denied the motion, and the jury returned a verdict of negligence against the corporation. It appealed.

The Third Circuit explained that factual issues surround the question of a landowner's negligence. "We gain little, if any, help from the many cases where the liability of abutting property owners to those using a street or highway are considered, for each case depends on its own particular facts." *Id.* Instead, the **Brandywine** Court established a duty for landowners to safeguard motorists on a public highway based upon the ancient maxim, "'*sic utere tuo ut alienum non laedas*' – so use your own [property] as not to injure another." *Id.*

The appellate court therefore endorsed the district court's instruction to the jury that "the owner of property abutting on a public highway is under a duty to keep it from being a source of danger to the public or to the travelers on such highway, to the extent that reasonable care on his part can guard against." *Id.* If the "condition of the tree . . . was known or by the exercise of ordinary care could have been known by the defendant, then it became the duty of the defendant to exercise reasonable care and diligence to prevent the tree from falling and injuring those who might have occasion to use the public highway." *Id.* Notably, the district court's instruction focused on the tree's "condition," rather than any observable "defect." If the defendant corporation

could have ascertained the tree's condition, and if a reasonably prudent owner of land would have alleviated that condition, liability attached.

Moreover, the Third Circuit said that, as to Mr. Cotillo's "right . . . to drive along the public road there can be no question." *Id.* "And of the duty of an abutting landowner to so use his property on his own land that it shall not cumber the highway and endanger the safety of those using it there would seem to be no doubt." *Id.* Thus, the court affirmed the judgment entered on the jury's verdict in favor of Mr. Cotillo.

We find the reasoning of **Brandywine** highly persuasive. Additionally, the courts of Pennsylvania's neighboring states, who share our deciduous forest ecosystem and topography, have also ruled that landowners owe a duty of reasonable care to prevent trees from falling onto abutting public streets or sidewalks. *See Hay v. Norwalk Lodge No. 730, B.P.O.E.*, 109 N.E.2d 481 (Ohio App. 1952); *Edgett v. State*, 7 A.D.2d 570, 184 N.Y.S.2d 952 (1959); *Narsh v. Zirlser Brothers, Inc.*, 268 A.2d 46 (N.J. Super. 1970); and *Hensley v. Montgomery County*, 334 A.2d 542 (Md. App. 1975).

In fact, the American Law Institute has distilled a landowner's duty with respect to tree and roadways as follows:

> A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from [the landowner's] failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

RESTATEMENT (SECOND) OF TORTS § 363(2) at 258.

Absent from this subsection is any use of the word "defect" to describe "the condition of trees." Thus, Ms. Felouzis's insistence that Mr. Harris, a motorist traveling on a public highway, needed to prove that her oak tree was notoriously defective is mistaken. To place such a burden upon a passing motorist would be nearly insurmountable, because the motorist's interaction with the landowner's property lasts mere seconds.

Ms. Felouzis's interpretation of the law would require all people using a public highway to assume the risk of trees falling on them, because they would almost never have an opportunity to inspect adjacent landowners' trees prior to using the highway. She would require motorists and pedestrians to care for themselves by picking and choosing which of our highways have the lowest potential of being struck by falling trees. In Pennsylvania ("Penns Woods"), this would render many public highways unfit for the use they are intended: the free flow of people, goods, and services from one place to another. In short, Ms. Felouzis would put an undue risk and burden upon the free flow of travelers, of commerce, and of governmental servants (such as police and firefighters).

This is untenable in modern society. Hence, as summarized in the RESTATEMENT, *supra*, the common law imposes a duty on landowners, in urban settings, to safeguard public highways from the threat of falling trees.

Unlike the passing motorist or pedestrian, Ms. Felouzis was very familiar with the land in question, because she owned it for four years prior to the incident. Also, her parents owned it before her, and her grandparents before

- 12 -

them. She knew and had access to the property for her entire life. Thus, as between her and Mr. Harris, she was in the far better position to recognize her oak tree's dangerous condition and to safeguard Mr. Harris's passage along the public highway from it. Indeed, by purchasing land which abutted a public highway in an urban setting, Ms. Felouzis assumed the duty to protect members of the public who used that highway from her trees.

As Dean Prosser explains, the law holds the rights of motorists and pedestrians in high esteem. "The public right of passage carries with it, once the highway has been established, an obligation upon occupiers of abutting land to use reasonable care to see that the passage is safe." W. Prosser, LAW OF TORTS § 57 at 352-53 (4th ed. 1971). The landowner "will be liable for any unreasonable risk to those who are on it, such as . . . overhanging objects ready to fall." *Id.* at 353. Furthermore, it "is scarcely suited to cities, to say that a landowner may escape liability for serious damage . . . merely by allowing nature to take its course." *Id.* at 355.

Hence, when a "tree is in an urban area, and falls into a city street, there is no dispute as to the landowner's duty of reasonable care, including inspection to make sure that the tree is safe." *Id.* This presents a factual question for the jury to decide the landowner's reasonableness in allowing the tree to grow based upon "the nature of the locality, the seriousness of the danger, and the ease with which it may be prevented." *Id.* at 356. The seriousness of the danger would require the factfinder to consider such things

as the location of the tree relative to the highway, its height, its age, the topography on which it grows, and other pertinent characteristics.

Thus, as Judge DeCostro correctly opined when dismissing Ms. Felouzis's motion for post-trial relief, "there was sufficient evidence to prove that the tree was in a dangerous condition by being situated on a 'steep and dangerous' hill with soil failing to hold trees, [a hill] from which trees fall regularly." Trial Court Opinion, 12/21/22, at 4. By using their local knowledge of Kennedy Boulevard and basic common sense of gravity, the jury was free to infer that Ms. Felouzis unreasonably allowed "nature to take its course" when she permitted a 110-year-old oak to grow on a steep hill, overlooking a busy, urban highway. Prosser, **supra** at 335. In the jury's view, this incident was foreseeable to the reasonably prudent landowner, and we cannot fault their logic in that regard. **See Stewart**, **supra**.

This stems from the jurors' collective wisdom that tall trees, when their roots give way, fall down hill, not up. When a highway is located below such a hill, leaving a tall, old tree to grow upon it can rationally be deemed imprudent neglect for the safety of motorists and pedestrians on the public highway. Therefore, it was surely within the province of the jury to infer that a reasonable landowner in Ms. Felouzis's circumstances would have removed, or at least pruned, the old tree before it could fall and injure Mr. Harris. Drawing such an inference, from all the facts surrounding a fallen tree, as to how a reasonably prudent landowner should weigh the cost of removal against

the high risk of severe injury to persons on a public highway "is, of course, the very heart of the jury's function." **Smith**, 153 at 479.

Moreover, the precedential case upon which Ms. Felouzis chiefly relies, **Barker**, **supra**, is readily distinguishable on its facts. There, a tree fell not onto a public highway, but into an adjoining property. Moreover, the tree did not harm a motorist, exercising the public's right of passage on a highway of the Commonwealth. Instead, it damaged two neighboring trees.

Additionally, the defendant in **Barker** argued for adoption of subsection (1) of Section 363 of the RESTATEMENT (SECOND) OF TORTS. According to that subsection, a landowner owes no duty for harm caused outside of her land due to a natural condition, such as a tree falling, water runoff, or landslide.[4] This Court, sitting *en banc*, declined to adopt subsection 1, because the ancient common law offered inadequate protection to persons harmed outside of a landowner's property.

---

[4] Section 363 of the RESTATEMENT (SECOND) OF TORTS provides in full:

> (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

> (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

Rejecting the RESTATEMENT (SECOND)'s no-duty-for-naturally-occurring-harm rule, we said:

> the arguments in favor of liability far outweigh any arguments in favor of non-liability. It may very well be true that the distinction between artificial and natural conditions was valid in a time when landowners were possessed of, and hence would have been charged with the care of large quantities of land. It would still be valid today in rural areas where large landholdings are common. Under those circumstances, the time consumed and the expense involved in inspecting and repairing natural conditions would be unreasonably large compared to the danger involved. Pennsylvania is blessed with immense areas of farming and undeveloped land and we do not wish to place unrealistic burdens on its owners.
>
> On the other hand, we do not believe that the distinction should be applied to land in or near a developed or residential area. Urban living, by altering the purpose for which the land is used, must also bring with it certain responsibilities. A tree growing in an urban or residential area does not have the same natural relation to surrounding land as a tree located in a rural setting. That tree, once growing in the midst of a forest, is no longer the same 'natural object' when a city grows around it or residential areas are developed in proximity to it. Specifically, the relatively minor expenditures in time and money that it will take to inspect and secure trees in a developed or residential area is not large when compared with the increased danger and potential for damages represented by the fall of such a tree.

*Barker*, 340 A.2d at 569. As such, *Barker* adopted a modified version of Section 365 of the RESTATEMENT (SECOND) OF TORTS to govern the facts of that case. However, the *Barker* Court did not consider the situation that this case presents – *i.e.*, a tree plummeting onto a busy highway in the middle of a city.

Unlike the present case, the adjoining landowners who litigated *Barker* were in an equal position to inspect each other's trees by simply looking at the neighboring trees from their property. They could have thereby put the

other landowner on actual notice of defects in the trees near their land. *See* Lois M. Vitti, *If a Tree Falls and No One Hears It . . . Or If It Falls on Your Neighbor (Yikes!)*, PBA REAL PROPERTY, PROBATE & TRUST LAW SECTION NEWSLETTER (Summer/Fall 2023) at 12-13 (explaining the steps individuals can take to protect property from a neighbor's potentially defective or dangerous tree under *Barker*).

Still, the opportunity of neighbors to inspect an adjoining property's trees differs greatly from a motorist who drives past the property in excess of 20 miles per hour. The passing motorist has little to no opportunity to inspect trees or to notify a landowner of a defect or other dangerous condition, assuming the motorist could even determine who owns the land in question. Furthermore, as Mr. Harris explained at trial, if he had stopped his car along Kennedy Boulevard and set even one foot on Ms. Felouzis's property to inspect her trees, he would have become a trespasser and a tortfeasor himself. *See* N.T., 3/29/22, at 160.

As such, we do not find *Barker* or its concern for a defect within a single tree to be controlling. Instead, we apply subsection 2 of Section 363 of the RESTATEMENT, which was specifically written to protect users of the public highways, like Mr. Harris, from falling trees. Based on subsection (2), we join the appellate courts of Ohio, New York, New Jersey, and Maryland, as well as the Third Circuit, in holding that, when a tree falls onto a public highway or sidewalk, in an urban setting, whether the tree was in a dangerous condition and that a reasonable landowner should have foreseen and, thus, should have

rectified that danger is a factual question for the jury. *See Brandywine*, *Hay*, *Edgett*, *Narsh*, and *Hensley*, *supra*.

Lastly, our learned colleague in his Dissent contends that our conclusion "misapprehends" principles of tort law. Dissenting Opinion, *infra*, at 3. He believes that we conclude, if a tree falls on a busy road and injures someone, it automatically sounds in negligence. That is *not* what we are holding. If we did, we would impose strict liability on landowners for all damages caused by their trees, which is not the common law. Instead, we follow the common law rule that a jury may determine that the landowner acted negligently by allowing the tree to grow unrestrained and unaltered in a dangerous condition near the roadway.

According to the Dissent, a visible defect in the tree is a legal prerequisite for the jury to impute knowledge upon a landowner that a tree possesses any risk to users of the highway. This is incorrect as a matter of fact, human experience, and Newton's Law of Gravity. When viewing a tree on a hillside, in the full context of its location, age, size, and topography, as the jury did here, the risk of potential harm may be immediately apparent to the reasonable landowner.

When the roots of a tree growing on a steep hillside eventually give way, it is foreseeable that it will fall directly down the slope, onto the public highway. Thus, a reasonably prudent landowner would remove or, at least, trim it. And as the Dissent admits, "If a reasonably prudent owner would have removed the tree or otherwise fixed the condition, then liability may attach

based on the jury's assessment of what a reasonably prudent landowner would have done." *Id.* at 6.

Hence, in this case, the jury rationally found that a reasonably prudent landowner would have known of the dangerous condition posed by Ms. Felouzis's tree, even without Mr. Harris's proof of a "defect." The proof that he offered was that a large, 110-year-old tree fell onto his car, from a steep hillside to the one shown above. Moreover, the jury was free to impute such knowing to Ms. Felouzis, because she should have known what a reasonably prudent landowner would have known.

As such, she was not entitled to judgment as matter of law, and the trial court properly denied her motion for JNOV. Ms. Felouzis's first two appellate issues warrant no relief.

## C.    Plaintiff's Lack of an Expert Witness

Turning to her third and final issue – whether Mr. Harris was required to produce an expert arborist to opine upon the nature of trees and their defects – we find wavier. "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

Under the Rules of Civil Procedure, "post-trial relief may not be granted unless the grounds therefor, if then available, were raised . . . by motion . . . at trial . . . ." Pa.R.C.P. 227.1(b)(1). This Rule "incorporates into the rule the principle of **Dilliplaine v. Lehigh Valley Trust Co.**, 457 Pa. 255, 322

A.2d 114 (1974), that basic and fundamental error is not a ground for a new trial in the absence of a timely objection at the trial. The rule extends the principle to all post-trial relief." Pa.R.C.P. 227.1(b)(1), Explanatory Comment-1983. "A ground for [JNOV] may not be raised for the first time in the Motion for Post-Trial Relief. It must be raised timely . . . during the trial, thus affording the court the opportunity to correct the error." *Id.* The Supreme Court of Pennsylvania explained that a party asserting a new legal theory in a post-trial motion has waived that theory.

Here, although Ms. Felouzis moved for a compulsory nonsuit during trial, at that juncture, she did not argue that Mr. Harris needed to produce an expert witness. In fact, she expressly disavowed that theory. Her counsel informed the trial court that she was "not suggesting, for purposes of nonsuit, that [Mr. Harris] needs an expert" witness. N.T., 3/30/22, at 26. Ms. Felouzis gave her express assent to the trial court that it need not consider whether an expert arborist was needed to overcome her motion for nonsuit. *See Trigg*, *supra* at 271. Because she conceded that an expert arborist was not required of Mr. Harris under Pennsylvania law, the Rules of Civil Procedure bar Ms. Felouzis from raising such a claim in seeking post-trial relief and, thus, on appeal. *See* Pa.R.C.P. 227.1(b)(1)

We dismiss her third and final appellate issue as waived.

Judgment affirmed.

PJ Lazarus joins this Opinion. PJE Bender files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

2/10/2025