J-A18033-23

2025 PA Super 30

JAMES HARRIS, JR. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANIELLE M. FELOUZIS :
:
Appellant : No. 85 WDA 2023

Appeal from the Judgment Entered March 22, 2023
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10649-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

DISSENTING OPINION BY BENDER, P.J.E.:  **FILED: February 10, 2025**

If a tree falls on a busy road and injures someone, does it automatically sound in negligence?  My distinguished colleagues' analysis suggests that the mere fact a tree falls on a highway automatically creates a question of fact regarding the landowner's negligence, and the plaintiff need not show any type of defect in the tree.  The Majority asserts that a contrary holding would "require all people using a public highway to assume the risk of trees falling on them…."  Maj. Op. at 12.  I find that tort law principles indeed insulate landowners from liability if the plaintiff fails to identify some potential problem with the tree.  Sometimes, healthy trees fall, and no one is to blame.  The Majority ignores this reality and, in doing so, incentivizes landowners to cut down healthy trees for no good reason.  I therefore respectfully dissent.

The facts are straightforward. Mr. Harris was driving on a highway when a 110-year-old oak tree fell from Ms. Felouzis's hillside, striking Mr. Harris's vehicle and causing him serious injuries. The parties' dispute lies in whether Mr. Harris was required to present some evidence that the tree suffered from a defect. Ms. Felouzis unsuccessfully moved for a nonsuit at the close of Mr. Harris's case and was found liable by the jury. I would grant relief on this claim, as I agree with Ms. Felouzis that Mr. Harris was required to offer some evidence that the tree was defective.

The Majority announces "that whether a landowner unreasonably permits a tree to grow in a dangerous condition, near an urban highway, is a factual question for the jury." Maj. Op. at 1. I submit that if we take this formulation at face value then Ms. Felouzis should prevail. It restates Ms. Felouzis's fundamental point: the plaintiff did not offer any facts showing a dangerous condition relative to the tree itself, and instead asked the jury to rely on conjecture (*i.e.*, the tree fell, therefore there must have been some issue with the tree). In rejecting this argument, the Majority seems to rely on a purported distinction between a landowner permitting a tree to grow in a **dangerous** condition versus a tree that has a specific **defective** condition. ***See id.*** at 3 (quoting the trial court's denial of the motion for nonsuit on grounds that "whether the tree was growing in 'a dangerous condition – as opposed to a defective condition – is a question that the jury could decide based upon the evidence that's here.'"). Respectfully, this distinction makes little sense. Virtually every tree that has grown beyond the sapling stage is

dangerous if it happens to randomly fall, as trees are known to do.[1]  A landowner cannot possibly be expected to guarantee complete safety from the forces of nature, something recognized by one of the Majority's own citations. *Narsh v. Zirbser Bros*., 268 A.2d 46, 50 (N.J. App. Div. 1970) ("The church was not a guarantor of the safety of those using the highway.  Its obligation was to exercise reasonable care to prevent the tree from falling and endangering the public.").  Thus, the Majority ends up holding that a jury may always decide if a landowner is liable for a fallen tree in an urban setting based on nothing more than the fact the tree fell.

I submit that this conclusion misapprehends tort law principles.  The Majority repeatedly stresses the jury's role in measuring what a reasonably prudent landowner would do, presumably as a bulwark against imposing liability for random acts of nature.  But, in stressing the jury's role, the Majority ignores that the reasonably-prudent-person test asks what that person would do in connection with known or knowable risks.  Our Supreme Court has summarized the applicable principles in a negligence case as follows:

---

[1] The Majority focuses on the land upon which the tree grew as opposed to a defect in the tree itself.  For instance, the Majority states, "[w]hen a highway is located below such a hill, leaving a tall, old tree to grow upon it can rationally be deemed imprudent neglect ….".  Maj. Op. at 14.  However, Mr. Harris did not allege that the hillside itself was so dangerous that a reasonably prudent landowner would not have permitted a tree to grow there.  The legal claim centered on the tree itself, not the land on which it grew.  In my view, a theory that the land itself was the defective condition is distinct from a claim that the tree was defective.

> Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff. The plaintiff proves the duty and breach elements by showing that the defendant's act or omission fell below the standard of care and, therefore, increased the risk of harm to the plaintiff. Once the plaintiff has carried this burden, s/he must further demonstrate the causal connection between the breach of a duty of care and the harm alleged: that the increased risk was a substantial factor in bringing about the resultant harm. *See Hamil v. Bashline*, … 392 A.2d 1280, 1288 ([Pa.] 1978). "[T]he necessary proximate cause will have been made out if the jury sees fit to find cause in fact." *Id.*

*Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 596 (Pa. 2012) (some citations omitted).

In the case of damaged, defective, diseased, rotted, or otherwise unhealthy trees, there is a logical potential causal link between the breach of the duty to inspect the trees and the injury. That is where the jury's function comes into play. The jury would determine if a landowner — who knew or should have known (via constructive notice) of the defect(s) — should have acted. But that role only comes into play if there is some defect to address. In the case of a healthy tree, the duty to inspect has no possible connection to the injury as the forces of nature brought down the tree and caused the injury in those cases, not the landowner's purported negligence. In other words, the Majority holds the landowner to an undefined duty with respect to healthy trees; presumably, my colleagues would require Ms. Felouzis and all other citizens of this Commonwealth who live in urban areas to remove all healthy trees to protect others from random, unforeseeable acts of nature. In

this regard, the Majority's result is little different than imposing strict liability on landowners for allowing trees to grow.

I am also unpersuaded by the caselaw the Majority relies on to back its position. The Majority finds support in, *inter alia*, **Brandywine Hundred Realty Co. v. Cotillo**, 55 F.2d 231, 231 (3d Cir. 1931), "one of the earliest reported cases on falling trees." Maj. Op. at 9. As in this case, in **Brandywine**, a tree fell on a passing motorist's car. Notably, as the Majority recognizes but brushes aside, that case involved a dead tree. The **Brandywine** Court specifically observed that "[t]he tree had been dead for four years, but, beyond its deadness, bore no exterior evidence of decay." **Brandywine**, 55 F.2d at 231. In terms of measuring what a reasonably prudent person would do in that situation, the fact that the tree was dead matters a great deal. A dead tree is often visibly identifiable notwithstanding visible rot, and plainly defective in a way a healthy tree is not. Like the Majority, I agree that "factual issues surround the question of a landowner's negligence," Maj. Op. at 10, but the Majority does not adequately address the fact that **Brandywine** involved a dead tree and, in the case *sub judice*, Mr. Harris offered no evidence regarding the tree's condition. In finding **Brandywine** on point, the Majority completely ignores the condition that gave rise to the duty to inspect: a problematic tree.

The Majority also latches on to the appellate court's failure to remark upon the jury instruction. According to my colleagues, it is notable that the instruction given in **Brandywine** "focused on the tree's 'condition,' rather

than any observable 'defect.'" ***Id.*** It is not clear to me why that is notable, and the Majority is simply wrong when it claims that the ***Brandywine*** Court "therefore endorsed the district court's instruction." ***Id.*** Appellate courts are supposed to refrain from addressing issues not raised by the litigants, and the opening paragraph of ***Brandywine*** states that the judge "submitted the case to the jury in a charge to which no objection was made or exception taken." ***Brandywine***, 55 F.2d at 231. It is unremarkable that an appellate court declined to spontaneously explore whether a given jury instruction was properly phrased.

In any event, even if I accepted that the ***Brandywine*** Court implicitly "endorsed" that instruction, the Majority's focus on the absence of the word "defect" is misguided when one considers the facts. The instruction's reference to the tree's "condition" obviously referred to the uncontroverted fact that the plaintiff offered evidence showing that the tree was dead prior to it falling. The fact that the tree was dead is, under the circumstances, the defective condition that the landowner should have discovered. The case does not suggest that a landowner must account for healthy trees.

The flaw in the Majority's attempt to relieve a plaintiff of the burden of showing some type of defect in the felled tree becomes evident when one considers the fact that the imposition of a duty is connected to the potential to alleviate the harm that occurred. ***Scampone***, ***supra***. The ***Brandywine*** Court contemplated that a duty to inspect the trees may have led the landowner to discover the dead tree, which, in turn, may have created the

- 6 -

duty of removing that tree. But the duty to exercise reasonable care presupposes that the proper exercise of care can mitigate or eliminate the threat. That is why a causal connection between breach and injury matters. A duty to inspect (and perhaps act) makes sense in the context of a defective tree. If a reasonably prudent owner would have removed the tree or otherwise fixed the condition, then liability may attach based on the jury's assessment of what a reasonably prudent landowner would have done. But what if the tree is healthy and not defective in any way? The landowner's duty is...to do what, exactly?

The Majority also finds validation for its holding in Subsection (2) of Section 363 of the Restatement (Second) of Torts, entitled "Natural Conditions," which addresses liability for tree damage. I determine that this section of the Restatement supports Ms. Felouzis's argument. Section 363 sets forth:

> (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

> (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

Restatement (Second) of Torts § 363 (1965).

The Majority stresses that Subsection (2) omits "any use of the word 'defect' to describe 'the condition of the trees.'" Maj. Op. at 11. I am

- 7 -

unpersuaded by this argument. The textual reference to an "unreasonable risk of harm arising from the condition of trees," in my view, obviously refers to some condition of the tree other than its natural state. ***See Brandywine***, ***supra***. Indeed, the Majority fails to recognize that Subsection (2) exists as an **exception** to the usual rule that "neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land." Accordingly, in the absence of a provision like Subsection (2), it could be argued that all trees constitute a "natural condition," such that the landowner bears no liability whatsoever, even for damage caused by dead and rotted trees as those conditions are usually the result of natural progression. Subsection (2), as an exception to this general rule of non-liability, makes clear that the drafters of this section believed that, in **some** circumstances, a landowner is liable for the failure to "prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."[2] The Majority errs by failing to appreciate the role of the exception within the broader rule.

Finally, the Majority's own citations to other precedents support my conclusion that the duty to inspect is inextricably linked to some defective

---

[2] If we are to find significance in what the Restatement does not say, I would simply point out that the drafters could have eliminated any reference to the "condition" of the tree if they intended for courts to impose liability for any tree that falls. The Subsection (2) exception, for example, could have simply stated something like: "A landowner is liable for trees that fall onto a highway."

condition pertinent to the fallen tree. The Majority cites, in addition to **Brandywine**, the following cases as consistent with its outcome: **Hensley v. Montgomery County**, 334 A.2d 542 (Md. App. 1975); **Narsh**, **supra**; **Edgett v. State**, 184 N.Y.S.2d 952 (N.Y. App. 1959); and **Hay v. Norwalk Lodge No. 730, B.P.O.E.**, 109 N.E.2d 481 (Ohio App. 1952). I submit that the facts and language within three of these cases supports the notion that the plaintiff must show a defect in the tree as a matter of law.[3]

Beginning with **Hensley**, the plaintiff's father testified that he "note[d] the presence of the dead tree during the calendar year before the accident occurred." **Hensley**, 334 A.2d at 543. The trial court directed judgment in favor of the defendants.[4] The Court affirmed, stating that the plaintiff "must

_____

[3] The **Edgett** case somewhat supports the Majority's holding, as in that case the plaintiff sued the State, which owned the land from which the tree fell. The State claimed that an "unprecedented storm" knocked down almost three dozen trees in the county where the accident occurred, and thus offered the defense that the tree did not fall due to its purported negligence. The **Edgett** Court noted that the State did not offer evidence that the storm occurred near the actual incident location, and the plaintiff called witnesses who testified that there was no storm. The Court stated, "the unprecedented storm (if there was one) was no absolute defense." **Edgett**, 184 N.Y.S.2d at 953. Significantly, the Court noted that "a witness for the claimants testified that[,] in 1949[,] he went to the local office of the State Highway Department and told them that 'the tree was in bad condition and needed at least trimming and should be removed.'" **Id.** at 954. While two dissenting judges argued that it was clear the tree fell due to the storm winds, the Court clearly accepted that there was some factual basis for the allegation that the tree was unhealthy.

[4] The plaintiff sued both the individual who was the "apparent owner of the property adjoining the road," as well as the "the governing body responsible for the road." **Hensley**, 334 A.2d at 543.

have shown not only that the tree constituted a danger to the lawful users of the abutting public road, but that the owner of the land upon which it stood was cognizant of the deteriorated condition of the tree or should have been cognizant of its condition." *Id.* at 544.   Much of the consequent analysis centered on the differing duties of the two defendants (private citizens versus governmental entities), as well as whether the road where the accident occurred was a "principal highway" or not. *Id.* at 547.  The Court concluded that the "proofs never belied the rural character of the road and thus, as a matter of law, failed to impose liability under the applicable rural rule." *Id.*[5] Nevertheless, the case proceeded from a factual allegation that the tree was dead and is therefore distinguishable.

In **Narsh**, the plaintiff "met his death when a large tree fell upon him as he was driving his car…." **Narsh**, 268 A.2d at 48.  A witness "previously noticed that the tree, which was very close to the road, was 'sort of rotten and there was no life to it at all.'" *Id.*  The Court set forth the law as follows:

> An abutting landowner, in the absence of municipal or statutory regulations placing the control of trees in or along the highway in the public authorities, is required to use due care to prevent harm from falling trees to persons lawfully using the highway, and **may be held liable for injuries sustained by travelers as a result of the fall of a tree through the active intervention of the abutting owner, or because of natural decay**.  The view has been taken that it is the duty of the landowner to exercise reasonable care to prevent the fall of a tree into the highway even

---

[5] The drafters of Section 363 of the Restatement (Second) "expresse[d] no opinion as to whether the rule stated in Subsection (2) may not apply to the possessor of land in a rural area."  Restatement (Second) of Torts § 363 (1965).

though this may entail constant and periodic inspection of the tree to determine its safe condition, but this rule has been held not to apply to owners of premises abutting rural highways.

*Id*. at 49 (citation omitted; emphasis added). As the bolded portion makes clear, a landowner is liable for an affirmative act that causes the tree to fall or "because of natural decay." Thus, a landowner is liable only if a tree has deteriorated or decayed to the point where a fact-finder may determine if the landowner had a duty with respect to the decayed tree.

Reviewing *Hay*, that case likewise links the landowner's liability to knowledge of a defective condition. In this passage, the Court recounts the plaintiff's allegations regarding the tree's condition:

> [The p]laintiff alleges … that several years prior to July 20, 1949, said tree was struck by lightning, extensively damaged and weakened; that the damage to the tree was visible and apparent to these defendants for a period of several years; that after said tree was struck and damaged by lightning, apparent natural processes of decay set in and further weakened said tree and its branches which extended over and above the traveled portion of the road; that at all times herein mentioned defendants had knowledge that portions of said tree extended over highway; that for a period of several years the defendants had knowledge that the tree had been struck by lightning, and had knowledge that the tree had been damaged and weakened; that the defendants negligently allowed and permitted said tree to remain in a damaged, weakened and defective condition near said highway when they knew that portions of said tree were damaged, weakened and defective and would fall in said highway and injure travelers thereon; and that [the] defendants failed and neglected to remove the tree or the damaged or weakened portions thereof, failed and neglected to wire or brace the damaged or weakened portions thereof or to do anything by way of making said tree secure, and failed and neglected to give notice to the traveling public of the defective, weakened and damaged condition then and there existing.

*Hay*, 109 N.E.2d at 483–84. The Court went on to conclude that,

- 11 -

in the absence of knowledge of a defective condition of a branch of a tree which in the course of natural events is likely to fall and injure a person in the highway, no liability attaches to the owner of the tree. On the other hand, where the owner has knowledge of the dangerous condition of the tree or its branches, it is his duty to exercise reasonable care to prevent the fall of the tree or its branches into the highway.

*Id.* at 485.

I thus disagree with the Majority's claim that these cases "hold[] that, when a tree falls onto a public highway or sidewalk, in an urban setting, whether the tree was in a dangerous condition … is a factual question for the jury." Maj. Op. at 17. The cited cases all involved evidence from the plaintiff that the trees were defective, and each case references those defects in connection with the landowner's duties. Thus, they are all readily distinguishable from this case and establish a basis for submitting the case to the jury in a way this one does not.

Finally, I add that the Majority counts Ohio as a jurisdiction supporting its view. I conclude that a recent, unpublished case from Ohio is in line with my view.[6] In ***Thornton v. Borstein***, 2021 WL 2694099 (Ohio App. 2021), the plaintiffs alleged that "they suffered bodily injuries and property damage when a tree on Mr. Borstein's property fell over and struck their car while they were driving past Mr. Borstein's house. … Their complaint set forth two negligence claims: one under premises liability, and another under *res ipsa*

---

[6] Ohio Rule Rep.Op.R. 3.4 states, "All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published."

- 12 -

*loquitur."* **Id.** at *1. The landowner, Mr. Borstein, moved for summary judgment, arguing that he did not have actual or constructive knowledge of the tree's condition and need for maintenance, and that *res ipsa loquitur* should not apply because Ohio limits that doctrine to man-made items. The Court aptly summarized the facts offered by the plaintiff in response to the motion, as follows:

> [The plaintiffs] opposed Mr. Borstein's motion, arguing that, as an urban landowner, he had an affirmative duty to inspect the trees on his property, that he was aware that the tree's limbs hung over the roadway to a substantial degree, that he was aware that some of the limbs lacked leaves, suggesting that the tree was in an unhealthy condition, and that the doctrine of *res ipsa loquitur* did apply. [The plaintiffs] attached an affidavit from Mr. Thornton[, one of the plaintiffs,] to their brief. Mr. Thornton averred, in part, that immediately prior to the incident, he observed that a substantial portion of the tree's limbs hung over the roadway, and that some of the limbs on the other side of the tree lacked leaves. [The plaintiffs] also attached photographs to their brief that showed the tree on top of Mr. Thornton's car, and the damage to the car's front passenger side.
>
> In his reply, Mr. Borstein did not dispute that he is an urban landowner. He argued that [the plaintiffs] produced no evidence indicating that he had actual or constructive knowledge that the tree on his property was unhealthy, nor any evidence from an expert opining that the tree was in poor condition or fell due to lack of maintenance. He argued that [the plaintiffs'] assertion that some of the limbs lacked leaves did not, by itself, show that the tree was unhealthy, and that the pictures [the plaintiffs] incorporated into and attached to their brief showed a tree that appeared green, full of leaves, and healthy. Additionally, he again asserted that the doctrine of *res ipsa loquitur* applies to man-made items, not a naturally occurring tree.

**Id.** (paragraph numbering omitted).

The trial court granted summary judgment and, on appeal, the Ninth District for the Court of Appeals of Ohio affirmed. Reviewing Ohio law, the

- 13 -

Court concluded that actual or constructive notice is a prerequisite to establishing a landowner's duty, regardless of whether the setting is urban or rural. It opined:

> [The plaintiffs] bore the burden of establishing that a genuine issue of material fact remained regarding whether Mr. Borstein had actual or constructive notice of the tree's allegedly hazardous condition, thereby triggering his "duty to exercise reasonable care to prevent an unreasonable risk of harm to others from [the] decaying, defective, or unsound tree[.]" A person has constructive notice of a hazard "if it was of a nature that it could or should have been discovered, if it existed long enough to have been discovered, and its discovery would have created a reasonable apprehension of danger." ***Davis v. Akron***, 9th Dist. Summit No. 27014, 2014-Ohio-2511, ¶ 16.
>
> As previously noted, in their brief in opposition to Mr. Borstein's motion for summary judgment, [the plaintiffs] submitted photographs of the fallen tree, as well as an affidavit from Mr. Thornton wherein he averred that, prior to the tree falling on his vehicle, he observed that a substantial portion of the tree's limbs hung over the roadway, and that some of the limbs on the other side of the tree lacked leaves. [The plaintiffs] also cited Mr. Borstein's own affidavit, pointing out that Mr. Borstein did not aver that he ever inspected the tree.
>
> Having reviewed the photographs and affidavits, this Court finds no error in the trial court's conclusion that [the plaintiffs] did not produce evidence to support their assertion that the tree was unhealthy and/or in danger of falling. The tree in the photographs appears green, full of leaves, and not patently unhealthy. ***See Wertz v. Cooper***, 4th Dist. Scioto No. 06CA3077, 2006-Ohio-6844, ¶ 13, 17 (affirming summary judgment in favor of the landowner when photographs indicated that the tree appeared healthy before falling); ***compare Levine v. Brown***, 8th Dist. Cuyahoga No. 92862, 2009-Ohio-5012, ¶ 25-26 (affirming a judgment against a landowner, in part, because photographs of the 'dead tree' showed that it was "riddled with termite holes, with no live branches, bark, or green leaves[,] and was "sick enough that a reasonable person viewing it would notice that it was dangerous"); ***Motorists Mut. Ins. v. Flynn***, 4th Dist. Highland No. 11CA28, 2013-Ohio-1501, ¶ 20 (reversing summary

judgment in favor of the landowner when photographs indicated that, prior to falling, the tree was "significantly and unusually leaning" in one direction). Additionally, [the plaintiffs'] own assertion that the tree was unhealthy or in danger of falling did not create a genuine issue of material fact regarding whether Mr. Borstein had actual or constructive notice that the tree was unhealthy or in danger of falling. ***See Wertz*** at ¶ 13 (noting that "simply because [the] appellant believed that the tree was dead or dying does not establish that [the] appellee knew or should have known that the tree was dead or dying[]"); ***Hooks v. Ciccolini***, 9th Dist. Summit No. 20745, 2002-Ohio-2322, ¶ 12 (noting that self-serving affidavits, standing alone, will not defeat summary judgment). **Simply put, [the plaintiffs] produced no evidence of the type listed in Rule 56(C) to establish that a genuine issue of material fact existed as to whether the tree was unhealthy or in danger of falling, or whether Mr. Borstein had actual or constructive notice that the tree was unhealthy or in danger of falling**. Moreover, while [the plaintiffs] assert that the trial court used the standard applicable to rural landowners as opposed to urban landowners, actual or constructive notice is a prerequisite to the duty of care under either standard, and nothing in the trial court's order indicates that it used the wrong standard.

*Id.* at *4-5 (emphasis added; paragraph numbers and some citations omitted).

For the reasons set forth *supra*, I am persuaded by this analysis. A plaintiff must offer some evidence to show that the tree was defective as a prerequisite for this type of negligence claim. The burden is on the plaintiff to show that the tree was defective, not on the defendant to show that it was healthy. The fact that Ms. Felouzis never inspected her land and trees beyond cursory visual glances is thus entirely irrelevant. The trial court should have granted Ms. Felouzis's motion for nonsuit as Mr. Harris offered no facts whatsoever concerning the tree's condition. I therefore respectfully dissent.